TAMMY B. STEPHAN *v.* PENNSYLVANIA GENERAL INSURANCE COMPANY ET AL.

PHOENIX GENERAL INSURANCE COMPANY *v.* TAMMY B. STEPHAN
(14490)

BORDEN, BERDON, NORCOTT, F. X. HENNESSY and MENT, Js.

---

Argued October 2, 1992—decision released March 2, 1993

*Michael P. DelSole,* for the appellant-appellee (Tammy B. Stephan).

*Eileen M. Condon,* with whom were *Joseph F. Trotta* and, on the brief, *Frederick J. Trotta,* for the appellee-appellant (Phoenix General Insurance Company).

BERDON, J. This appeal presents the following issues: (1) whether the trial court improperly allowed Pennsylvania General Insurance Company (Pennsylvania) and Phoenix General Insurance Company (Phoenix), which provided underinsured motorist coverage, to limit their liability to the insured by taking credit for liability payments made to other claimants; and (2) whether the trial court abused its discretion by awarding the insured statutory interest on the arbitration award from the date of the award. We conclude that the policy language in this case prevents the insurers from taking credit for payments made to other individuals, and that it was within the trial court's discretion to award statutory interest to the insured.

The parties agreed to the following facts. On October 7, 1987, while riding as a passenger in a vehicle that she owned, Tammy B. Stephan sustained severe personal injuries when her vehicle collided with another vehicle operated by Lila Simpson. Negligence on the part of both the operator of Stephan's vehicle and Simpson caused the accident. Simpson was insured by Colonial Penn Insurance Company (Colonial) under a policy providing liability limits of $100,000 per person and $300,000 per accident. Stephan released Simpson from liability when she recovered $100,000 from Colonial.

Stephan's insurance policy with Pennsylvania provided $100,000 single limit liability coverage and $200,000 underinsured motorist protection.[1] The single limit liability policy with Pennsylvania was

---

[1] Stephan was insured under the Pennsylvania policy for both of her automobiles, each of which had uninsured motorist limits of $100,000. Therefore, she had a total of $200,000 uninsured motorist coverage under the Pennsylvania policy. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 446 A.2d 1059 (1982). Statutes and regulations that are applicable to uninsured motorist coverage also apply to underinsured motorist coverage. *Lumbermens Mutual Casualty Co.* v. *Huntley,* 223 Conn. 22, 28 n.9, 610 A.2d 1292 (1992).

exhausted when it was divided among Stephan, Simpson and another passenger who had been injured in the accident. Stephan received $28,500 of the $100,000 total, and Simpson and the other passenger received the remaining $71,500. In addition, Stephan, as a resident of her parents' household, was entitled to $600,000 underinsured motorist benefits under a policy issued to Stephan's parents by Phoenix.

After receiving $28,500 from Pennsylvania and $100,000 from Colonial, Stephan made a demand on Pennsylvania and Phoenix for arbitration pursuant to the underinsured motorist provisions of their policies. During arbitration, the parties agreed that liability was not an issue, that all underlying insurance had been exhausted, and that the amount of the underinsured motorist award owed to Stephan would be prorated between Pennsylvania and Phoenix. The issues before the arbitrators included: (1) the total damages sustained by Stephan; (2) the amount of underinsured motorist coverage each insurer provided; and (3) the credits to which the insurers were entitled. The majority of the arbitrators concluded that: (1) Stephan had sustained damages totaling $450,000 as a result of the injuries she incurred in the accident; (2) the underinsured motorist coverage totaled $800,000 (Pennsylvania in the aggregate amount of $200,000 and Phoenix in the aggregate amount of $600,000); and (3) the $450,000 damages owed to Stephan by Phoenix and Pennsylvania should be reduced by $200,000. The arbitrators arrived at the $200,000 credit by totaling the $100,000 paid to Stephan by Colonial, the $28,500 paid to Stephan by Pennsylvania, and the $71,500 paid by Pennsylvania to Simpson and another passenger who had been injured in the accident. As a result, the arbitrators concluded that the net amount due to Stephan was $250,000.

Stephan filed an application in the Superior Court pursuant to General Statutes § 52-419[2] to correct or modify the award of the arbitrators. Stephan claimed that Pennsylvania and Phoenix could not limit their liability by taking credit for $71,500 paid to Simpson and another injured passenger. Instead, Stephan claimed that she was entitled to a net award of $321,500, calculated by deducting the $100,000 paid by Colonial and the $28,500 paid by Pennsylvania from the total damages of $450,000. She also made a claim for interest on the award. Phoenix filed an application pursuant to General Statutes § 52-417[3] to confirm the arbitrators' award. Pennsylvania did not initiate any action in the Superior Court, but was named a party to the proceedings in Stephan's application to correct or modify the award.

The trial court denied Stephan's application to correct or modify the award, but allowed interest on the award from the date of the arbitrators' decision.[4] Stephan appealed from the judgments of the trial court to the Appellate Court, and Phoenix filed a cross

[2] General Statutes § 52-419 provides in pertinent part: "(a) Upon the application of any party to an arbitration, the superior court . . . shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."

[3] General Statutes § 52-417 provides in pertinent part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[4] General Statutes § 37-3a provides in pertinent part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings . . . ."

appeal. We transferred the appeal and cross appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

I

We begin our analysis by determining whether the terms of Stephan's insurance policies permitted Phoenix and Pennsylvania to reduce the damages owed to her by taking credit for payments made to others injured in the accident. If we determine that the policies do not allow the reduction, we need not go further to ascertain whether the reduction would be valid under General Statutes § 38a-336 (b), formerly General Statutes § 38-175c (b) (1), or § 38-175a-6 (d) of the Regulations of Connecticut State Agencies. Upon judicial review of compulsory arbitration proceedings pursuant to § 38a-336 (c), "the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 191, 530 A.2d 171 (1987).

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." *Schultz* v. *Hartford Fire Ins. Co.,* 213 Conn. 696, 702, 569 A.2d 1131 (1990). The policy words must be accorded their natural and ordinary meaning. *Kelly* v. *Figueiredo,* 223 Conn. 31, 35, 610 A.2d 1296 (1992). Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 375, 593 A.2d 498 (1991). This rule of construction may be not applied, however, unless the policy terms are indeed ambiguous. *Kelly* v. *Figueiredo,* supra,

37. Moreover, the mere fact that the parties advance different interpretations of the language in question " 'does not necessitate a conclusion that the language is ambiguous.' " Id.

Both the Phoenix and Pennsylvania policies contain identical exclusionary language as follows: "Any amounts otherwise payable for damages under this coverage shall be reduced by all sums: (1) Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A . . . ."

The gravamen of Stephan's claim is that Phoenix and Pennsylvania may not deduct payments made to other parties because their policies provide that the insurer may reduce the damages owed to the claimant by the amount of *"the* bodily injury." (Emphasis added.) The policies do not say *"a* bodily injury," or *"any* bodily injury," or *"all* bodily injuries," but are expressly limited to the singular *"the* bodily injury." (Emphasis added.) This phrase undoubtedly refers to the claimant's bodily injury, and not to any other bodily injuries.

As a definite article, the word "the" refers to a specific object whereas the indefinite articles "a" and "an" refer to unlimited objects. Webster's Third New International Dictionary. To interpret "the bodily injury" to mean "a bodily injury" or "any bodily injuries" would be to distort the plain and unambiguous meaning of this simple phrase. Indeed, as we noted above, even if the policy language were ambiguous, standard rules of construction mandate that we construe such ambiguity against the insurer. *Streitweiser* v. *Middlesex Mutual Assurance Co.,* supra, 375.[5] We conclude that the poli-

---

[5] Phoenix and Pennsylvania also argue that this court's interpretation of a similar policy in *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 569 A.2d 1105 (1990), permits them to reduce their damages to Stephan by amounts paid to others. In that case we concluded that the phrase " '[a]ll

cies did not permit Phoenix and Pennsylvania to reduce the damages owed to Stephan by taking credit for payments made to others. Accordingly, we need not determine whether the reduction would be permitted by General Statutes § 38a-336 (b) or § 38-175a-6 (d) of the Regulations of Connecticut State Agencies.

## II

In its cross appeal, Phoenix challenges the trial court's award of interest to Stephan "from the date of the arbitration award . . . to the date of this judgment . . . at the rate escribed by General Statutes § 37-3a."[6] Whether interest should be allowed as an element of damages "is primarily an equitable determination and a matter within the discretion of the trial court." (Internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 701–702, 590 A.2d 957 (1991). The court's determination should be made "in view of the demands of justice rather than through the application of any arbitrary rule." (Internal quotation marks omitted.) Id., 702. Whether interest may be awarded depends on whether the money involved is "payable"; General Statutes § 37-3a; see *White Oak Corporation* v. *Department of Transportation*, 217 Conn. 281, 302, 585 A.2d 1199 (1991); and "whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Walsh*, supra.

Phoenix argues that Stephan is not entitled to interest because her decision to challenge the award caused the payment delay. This argument would effectively

sums paid . . . ' must be construed to refer to payments made to other victims as well as the [amount] paid to the defendant." (Emphasis added.) Id., 636. Our conclusion in *American Motorists Ins. Co.* is not controlling in this case, however, because we did not interpret the phrase "the bodily injury."

[6] See footnote 4.

deny interest to every appellant. Of course, the simple answer is that Phoenix could have prevented interest from running on the undisputed portion of the award simply by paying that portion of the award. Furthermore, it is "well established that we will not overrule the trial court's award of interest absent a clear abuse of discretion." *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 676, 591 A.2d 101 (1991). Phoenix has not sustained its burden of showing that the trial court abused its discretion in this case.

Nevertheless, because this decision has increased the net award to Stephan by disallowing a reduction of $71,500 paid to others, and because the award of interest is within the sound discretion of the trial court to be made in view of the demands of justice on the basis of equitable principles, the issue of whether interest should run on the net award allowed by the arbitrators ($250,000), or the amount as modified by this court ($321,500), is a matter for the trial court to determine.

The judgments are reversed in part and the cases are remanded to the trial court with direction to modify the judgments to allow Stephan a net award of $321,500 and to determine the amount upon which interest should run.

In this opinion the other justices concurred.