[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 13, 1995
The plaintiffs, Coilmate, Inc. and Joseph Julian, president, filed an amended complaint on February 10, 1994, alleging in four counts that the defendant, Liberty Mutual Insurance Co. (Liberty), neglected and/or refused to defend or cover a patent infringement claim brought by Takahashi against the plaintiffs, and that Liberty breached an implied covenant of good faith and fair dealing. The first and second counts alleged failure to defend or cover a patent infringement claim brought by Takahashi against Coilmate, Inc. and Julian, as insureds under the policy, respectively. The third and fourth counts alleged breach of an implied covenant of good faith and fair dealing as to Coilmate, Inc. and Julian, respectively.
On April 7, 1994, Liberty moved for summary judgment on counts one and two of the complaint, arguing that it had no duty as a matter of law to defend and indemnify claims not covered by the insurance contract with the plaintiffs. In its memorandum in support of the motion for summary judgment, Liberty claimed to move for summary judgment on all counts of the complaint. However, Liberty did not address counts three and four in its memorandum, and did not mention those counts in its motion for summary judgment. Thus, the court will only consider summary judgment as to counts one and two.
On June 17, 1994, the plaintiffs filed a memorandum of law in opposition to the motion for summary judgment, along with the affidavit of Julian, and supporting documentation. On August 5, 1994, Liberty filed a reply memorandum in support of the motion for summary judgment.
"Pursuant to Practice Book Section 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a CT Page 895 matter of law." Suarez v. Dickmont Plastics Corp. ,229 Conn. 99, 105, 639 A.2d 507 (1994). "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law, . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted.)Id. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Id.
An insurer's duty to defend and indemnify is solely defined by the allegations of the underlying complaint against the insured. Missionaries of Co. of Mary. Inc.v. Aetna Casualty Surety Co., 155 Conn. 104, 110,230 A.2d 21 (1967). "The duty to defend has a broader aspect than the duty to indemnify." Id. Takahashi's complaint against the plaintiffs alleges that the plaintiffs infringed its patent rights in the manufacture, sale or use of the Coilmate machine. There is no mention in the complaint of injury caused by advertising the product.
In this question of first impression, there are no facts in dispute, and the court must determine whether, as a matter of law, "advertising injury" covers a claim of patent infringement. See Aetna LifeCasualty Co. v. Bulaong, 218 Conn. 51, 58,588 A.2d 138 (1991) (interpretation of insurance contract is a question of law). In its memorandum in support of summary judgment, Liberty argues that patent infringement does not fall within the scope of "Advertising Injury" as defined in the insurance contract, because patent infringement is not enumerated in the policy, and patent infringement is not caused by advertising. The parties agree that, in order to trigger Liberty's duty to defend, the patent infringement must have arisen out of an offense occurring in the course of advertising and must be an enumerated offense under the policy.
In their memorandum of law in opposition to summary judgment, the plaintiffs argue that patent infringement CT Page 896 is an enumerated offense in the policy by placing emphasis on the words "title" and "infringement." They argue that the language of the contract is ambiguous, and that by reading the word "title" in conjunction with the word "infringement," patent infringement is reasonably contemplated within the policy. The plaintiffs reason that a person who holds a patent holds title, and that the word "infringement" is often used in conjunction with patent law. To satisfy the causal connection prong, the plaintiffs argue that but for advertising the product, no sales would have occurred, and therefore, the offense did arise in the course of advertising.
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Stephan v. Pennsylvania General Ins.Co., 224 Conn. 758, 763, 621 A.2d 258 (1993). "The policy words must be accorded their natural and ordinary meaning." Id.
"The court must interpret the insurance contract as a whole with all relevant provisions considered together." Schultz v. Hartford Fire Ins. Co., 213 Conn. 696,705, 569 A.2d 1131 (1990). "If it is reasonably possible to do so, every provision of an insurance policy must be given operative effect . . . because parties ordinarily do not insert meaningless provisions in their agreements." (Citations omitted; internal quotation marks omitted.) Ceci v. National Indemnity Co.,225 Conn. 165, 175-76, 622 A.2d 545 (1993).
Any ambiguity in the terms of an insurance policy must be construed in favor of the insured, but this rule of construction "may not be applied, however, unless the policy terms are indeed ambiguous." Stephan v.Pennsylvania General Ins. Co., supra, 224 Conn. 763. "Moreover the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) Id., 764. CT Page 897
The policy provides under "Coverage B. Personal and Advertising Injury Liability," that this insurance covers any "`Advertising Injury' caused by an offense committed in the course of advertising your good, product or services." Section B.1.b.(2).
Section V. defines "Advertising Injury" as an injury arising out of one or more of the following offenses:
 a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
 b. Oral or written publication of material that violates a person's right of privacy;
 c. Misappropriation of advertising ideas or style of doing business; or
d. Infringement of copyright, title or slogan.
First, patent infringement is not contemplated in the language of the policy. Viewing the coverage sections, the definition sections and the exclusion sections of the contract together as a whole, demonstrates that coverage is restricted to injuries committed in the course of advertising, and that patent infringement is not reasonably contemplated as an advertising activity.
The word "title" is not ambiguous when viewed in the context of the contract as a whole. Given that all of the definitions, the exclusions and the coverage provisions in the contract concern "Advertising Injury," the word "title" is not to be used in the sense of "title" to land, or "title" to patent rights, or any other possible definition of the word "title" that is not potentially covered by the "Advertising Injury" provision.[1] A patent infringement claim does not focus on the advertisement using the name of the product, but rather, "[t]he issue of infringement focuses on whether a particular device falls within the particular boundaries of a patentee's invention, which are defined by the claims of the patent." Novametrix Medical Systems,Inc. v. BOC Group. Inc., 224 Conn. 210, 217-18 n. 11, CT Page 898618 A.2d 25 (1992). "In an infringement action, the patent owner must prove by a preponderance of the evidence that the accused devices fall within the scope of the asserted claims as properly interpreted . . . Thus, the asserted claims must first be defined, and then compared with the accused devices to determine whether what is claimed has been made, used or sold by another." (Emphasis added; citations omitted.) U.S.Surgical Corp. v. Hospital Products International Pty.Ltd., 701 F. Sup. 314, 347 (D.Conn. 1988).
The statutory language describing the patent infringement claim contemplates some action beyond advertising the product, and most, if not all, courts that have addressed the issue have held that advertising alone does not state a claim for patent infringement. See, e.g., Ling-Temco-Vought, Inc. v. KollsmanInstrument Corp. , 372 F.2d 263, 270 (2d Cir. 1967);National Fire Insurance Co. v. Siliconix, 729 F. Sup. 77,79 (N.D.Cal. 1989); Powerlock Floors, Inc. v.Robbins Flooring Co., Inc., 327 F. Sup. 388, 390 (Del.), aff'd, 464 F.2d 1022 (1971); Merry Mfg. Co. v. BurneTool Co., 206 F. Sup. 53, 62 (N.D.Ga.), aff'd, 335 F.2d 239
(5th Cir. 1962).
The plaintiffs' reading of the phrase "infringement of copyright, title and slogan" as including either direct or indirect patent infringement would torture the ordinary meaning of the words used in the policy. This is a question of first impression in Connecticut, but the court follows the reasoning of similar cases that have found patent infringement is not contemplated by phrases similar to "infringement of title." See, e.g.,Everest Jennings, Inc. v. American Motorists Ins. Co.,23 F.3d 226, 230 (9th Cir. 1994) (to find that coverage for "disparagement of title" means patent infringement would "permit coverage far exceeding the objectively reasonable expectations of the insured based on the explicit language of the policy."); St. Paul Fire Marinev. Advanced International Systems, Inc., 824 F. Sup. 583,586-87 (E.D.Va. 1993), aff'd, 21 F.3d 424 (4th Cir. 1994) ("[I]t is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of `copyright, title or slogan,' but CT Page 899 then include patent infringement, sub silentio, in a different provision, by reference to `unauthorized taking of . . . [the] style of doing business'"; inducement does not clear the predicate offense hurdle because it is not enumerated in the policy).[2]
The policy language restricts coverage to advertising injuries. The plaintiffs had no reasonable expectation that patent infringement coverage is potentially an advertising injury as defined by the policy.
In addition to failing to establish that patent infringement is contemplated by the policy language, the plaintiffs have failed to establish that the offense arose in the course of advertising. Section B.1.b.(2) requires a causal connection between the "Advertising Injury" and the injury in Takahashi's complaint.
The Takahashi complaint does not allege an injury resulting from the advertisement of the patented product, but from the sale, manufacture and use of the product.[3] The plaintiffs argue that, but for the advertising, the patent infringement would not have occurred.
Although the plaintiffs cite some cases in which no apparent connection is required, the court follows the majority of cases that find that the plaintiffs' argument "contains a fundamental flaw in that it reads the requirement that the infringement occur in the course of advertising out of the policy. Taken to its extreme, this argument would lead to the conclusion that any harmful act, if it were advertised in some way, would fall under the grant of coverage merely because it was advertised." National Union Fire Ins. Co. v. Siliconix,Inc., supra, 729 F. Sup. 780. See also, Intex PlasticsSales Co. v. United Nat'l Ins. Co., 23 F.3d 254, 256 (9th Cir. 1994) ("infringement does not occur in the course of the insured's advertising activities"); Iolab Corp. v.Seaboard Surety Co., 15 F.3d 1500, 1507 (1994) (necessary to show that advertising caused the patent infringement, not the liability; also necessary to show loss was caused by advertising, rather than by infringement of patent); New Hampshire Ins. Co. v.Chaides Construction Co., Inc., 847 F. Sup. 1452,1457 (N.D.Cal. 1994) ("The acts of making, selling or CT Page 900 using [a patented invention] simply do not arise out of the insured's advertising activities. Selling is not equivalent to advertising"); St. Paul Fire Marine v.Advanced International Systems, Inc., supra,824 F. Sup. 586 ("direct infringement claim does not fall within the policy's coverage merely because the infringing device may have been advertised"); AetnaCasualty Surety Co. v. Superior Court (WatercloudBed Co., Inc.), 19 Cal.App.4th 320, 23 Cal.Rptr.2d 442,446 (1993) (patent infringement cannot be committed in the course of advertising activities: "[I]n patent infringement cases, the patentee is not injured because a product incorporating its invention is advertised, but because the infringer, without consent, used or sold a product utilizing a protected invention") (internal quotation marks omitted).
Because there is no genuine issue of material fact, and because "Advertising Injury" as set out in the policy does not potentially include patent infringement as a matter of law, the defendant's motion for summary judgment as to counts one and two of the plaintiffs' amended complaint is granted.