[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, American National Fire Insurance Co. ("American"), seeks a declaratory action that it does not have a duty to defend or indemnify its insured, the defendant, Richard Ewing, in the underlying action against Ewing for damages caused by Ewing's negligent and/or intentional acts of making "harassing, indecent and/or obscene telephone calls."
At trial, the parties stipulated to the following CT Page 1262-A facts: the defendant made numerous phone calls to the same number and spoke to three females who answered the phone, the defendant made comments of an unacceptable nature to the females, and the defendant did not intend to cause alarm to the females. Further testimony and evidence presented at trial showed that the females were a woman and her teenage daughters, that the defendant's comments were of a sexual nature, and that the three females are the plaintiffs in the underlying action against Ewing. The defendant offered no evidence at trial.
The personal liability coverage section of the policy states in relevant part:
 If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
 1. pay up to our limit of liability for the damages for which the insured is legally CT Page 1262-B liable; and
 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence
equals our limit of liability.
(Emphasis in original.) Exhibit 1.
The term "occurrence" is defined in the policy as: "an accident, including exposure to conditions, which results, during the policy period, in: a. bodily injury; or b. property damage." (Emphasis added.) Id.
The policy expressly excludes coverage for injury or damage "which is expected or intended by the insured." Id.
Discussion
CT Page 1262-C
American argues in its trial brief that Ewing is not entitled to a defense because: "1) the obscene phone calls do not fall within the insuring agreement because they were not accidents; 2) the obscene phone calls are excluded from coverage because they were intentional acts; and 3) Connecticut public policy prohibits a person from insuring against his illicit, criminal actions."
Ewing argues in his trial brief that the phone calls, though made intentionally, fall under the definition of "accidents" because he did not intend the injury caused by the phone calls, that his actions were not intentional because the resulting harm was not intentional, and that these acts should be insured as a matter of public policy.
An insurer's duty to defend and indemnify is solely defined by the allegations of the underlying complaint against the insured. Missionaries of Mary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104, 110, 230 A.2d 21 (1967). "An insurance policy is to be interpreted by the same general rules that CT Page 1262-D govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Stephan v. PennsylvaniaGeneral Ins. Co., 224 Conn. 758, 763, 621 A.2d 258 (1993). "The policy words must be accorded their natural and ordinary meaning." Id. Any ambiguity in the terms of an insurance policy must be construed in favor of the insured, but this rule of construction "may not be applied, however, unless the policy terms are indeed ambiguous." Id.
The plaintiffs in the underlying action, in their two count complaint, allege that Ewing, by making the obscene phone calls, acted with "negligence and carelessness" in the first count, and "intentional and/or with reckless disregard" in the second count. The acts complained of are "harassing indecent and/or obscene telephone calls." Exhibit 2.
The first issue is whether the acts described in the underlying complaint are "occurrences" as defined in the policy. "Occurrences" are defined as "accidents". "Accident," an unambiguous term, is defined as "1. a: an unforeseen and CT Page 1262-E unplanned event or circumstance; b: lack of intention or necessary; 2. a: an unfortunate event resulting especially from carelessness or ignorance; b: an unexpected happening causing loss or injury." Webster's Ninth New Collegiate Dictionary 49 (1988). Because Ewing has conceded that he intentionally made unacceptable phone calls to the same number on numerous occasions, his actions do not fall within policy coverage.
The defendant urges the court to define "accident" as an "unexpected happening." See Commercial Contractors Corp. v.American Ins. Co., 152 Conn. 31, 42, 202 A.2d 498 (1964). That definition is incorporated into the dictionary definition provided by the plaintiff, and it does not alter the fact that the phone calls were not accidental, but were made intentionally. The phone calls are not unexpected happenings. The stipulation that the defendant did not intend to harm the recipients of his phone calls does not alter the intentional nature of his acts.
In Imperial Casualty Indemnity v. State,8 Conn. L. Rptr. 476 (March 10, 1993, Wagner, J.), the insured sought a declaratory judgment that they had no duty to defend members of CT Page 1262-F the state police who committed illegal wiretapping. The plaintiffs argued that the insured had a duty to defend because the underlying claim would allow a finding of negligence, which would be covered by the policy. The policy in Imperial, like the policy in the present case, covered "occurrences" which were defined as "accidents." Id, 477. The court found that because "occurrences" were defined as "accidents," "the policy does not cover damages from intentional acts." Id.
In Providence Washington Insurance Group v.Albarello, 784 F. Sup. 950 (D. Conn. 1992), the defendants sought insurance coverage for a claim by a former employee for illegal discharge and conversion of his stock. The policy inAlbarello, like the policy in the present case covered "occurrences" which are defined as "accidents".[1] Id., 952. Like Ewing, the defendants in Albarello "argued that although the alleged discharge and conversion of stock were intentional, . . . [they] did not intend any of the bodily harm [the claimant] has alleged." Id., 953. Judge Cabranes drew a clear distinction between the act and the result:
The damage itself may be "accidental" in CT Page 1262-G the sense of unintended, but the policy insures against bodily injury or property damage "caused by" an accident. Put another way, the Policy's plain language indicates that bodily or property damage is not itself the "accident" insured against.
Id.
In the present case, the clear language of the policy excludes intentional acts from coverage.[2] Ewing has admitted that he intentionally made numerous calls to the same telephone number and made unacceptable statements to the female recipients of those calls. These intentional acts are not occurrences as defined by the policy, and therefore, American has no duty to defend Ewing in the underlying action.