[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a dispute between an insured and its insurers concerning whether a claim against the insured involving sexual harassment in the workplace is covered by insurance. The plaintiff is Springdale Donuts, Inc. d/b/a Dunkin' Donuts, which is located on Hope Street in Stamford. The three defendants are the Aetna Casualty Surety Company of Illinois, which issued a commercial general liability policy, Farmington Casualty Company, which issued a workers compensation policy, and Aetna Casualty 
Surety Company, which issued a commercial excess liability policy. The three insurers were described as Aetna companies and will be referred to in this memorandum as the defendants.
In the first count of its three count complaint, the plaintiff alleges that the defendants had issued policies to it as the insured which were in full force in August, 1995, when two of the plaintiff's employees, Helen Ritch and her daughter, Tina Ritch, who were cashier-clerks, sued their co-worker, Sheriff Mohamed, for mental and emotional distress caused by Mohamed's conduct toward them while working for the plaintiff. In addition, the Ritches sued the plaintiff, claiming that it was negligent in failing to correct Mohamed's conduct toward them. The plaintiff also alleges in its first count in this present action that the defendants refused to defend the two Ritch suits, which were brought in the U.S. District Court, that the actions were settled for $17,500, that the plaintiff incurred legal fees in defending those suits and in pursuing this present action, and that monetary damages of $38,600 were claimed. In the second count of the complaint, the plaintiff alleges that the defendants breached the covenant of good faith and fair dealing by not notifying the plaintiff of the Ritch lawsuits in a timely manner which in turn resulted in defaults entering against the plaintiff in the federal action. In the third count, the plaintiff claims that the defendants waived any right to deny coverage by their failure to forward the Ritch law suits documents promptly to the CT Page 10875 plaintiff.
The defendants filed an answer admitting that the three policies were in full force and effect at all relevant times, but denying that any of the policies provided coverage for the claims brought by the Ritches. As to the second count of the complaint, the defendants agreed that they received the Ritch papers and approximately six weeks later notified the plaintiffs that they would not provide coverage and suggested that the plaintiff hire its own attorney to defend the Ritch claims. The defendants agreed that a default entered against the plaintiff but contend that a judgment did not enter.
The defendants also filed thirteen special defenses. The first such defense refers to exclusion 2 (a) of the commercial liability policy, which excludes intentional bodily injury or property damage. The second defense concerns an exclusion in Section I, 2 (e), for bodily injury sustained by an employee of the insured. The third special defense alleges that the commercial general liability policy does not apply to bodily injury not caused by an "occurrence." In the fourth special defense, the defendants contend that exclusion 2 (d) refers to claims against the insured arising out of workers compensation law. The fifth defense refers to the umbrella policy and the exclusion in Section I, paragraph 1 (a) (1), for bodily injury unless caused by an occurrence. In the sixth special defense it is contended by the defendants that the excess policy does not apply to bodily injury that is intentional from the standpoint of the insured. The seventh defense asserts that the umbrella policy does not apply to bodily injury related to the employment of any person by the insured. The eight special defense claims that the umbrella policy does not apply to an obligation of the insured based on workers compensation. In the ninth special defense, the defendants claim that there is a retained limit or deduction which was greater than the amounts paid to settle the Ritch lawsuits. The tenth defense alleges that the workers compensation policy only applies to bodily injury caused by an accident. In the eleventh special defense as amended, the defendants assert that the workers compensation policy, part Two, paragraph (c) (4) (5) and (7), excludes coverage for obligations arising out of the workers compensation law, bodily injury intentionally caused by the insured, and damages arising out of demotions, discipline, harassment or discrimination of any employee. In the twelfth defense, it is argued that any difficulties that the plaintiff incurred in defending the Ritch lawsuits were caused by its own CT Page 10876 conduct in failing to obtain the pleadings from the court where the suit was pending, or from counsel for the Ritches, and because it allowed a default to enter against itself. The thirteenth special defense contends that paragraph 3 (h) of the umbrella policy excludes personal injury consisting of discrimination relating to employment of any person by the insured. An insurer has the burden of proving an exception to coverage of a risk. Young v. American Fidelity Insurance Co.,2 Conn. App. 282, 286, 479 A.2d 244 (1984).
The issues of the extent of coverage and whether the defendants had a duty to defend the plaintiffs in the Ritch suits is governed by certain well-known principles. The question is whether the claims asserted by the Ritches appear to bring their suits within the coverage of the policies issued by the defendants. Schwartz v. Stevenson, 37 Conn. App. 581, 584,657 A.2d 244 (1995) ("the duty to defend depends on whether the complaint in [the underlying] action stated facts that appear to bring [the plaintiff's] claims of damages within the policy coverage"). The duty to defend applies even if one "allegation of the complaint falls even possibly within the coverage." (Emphasis in original; citations omitted.) Id., 585. Another axiom of insurance law is that if there are any ambiguities in the policy, the language thereof must be construed in favor of the insured. Stephan v. Pennsylvania General Insurance Co.,224 Conn. 758, 763-64, 621 A.2d 258 (1993) ("This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous . . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous.") (Citations omitted; internal quotation marks omitted.)
Thus, the court's task is to examine the claims asserted in the Ritch lawsuits against the background of the wording of the three insurance policies issued by the defendants to the plaintiff to determine whether such claims are within the coverage of the policies. The Ritches filed their actions in August, 1995, in the U.S. District Court for Connecticut, and were assigned docket numbers 395CV01681 and 395CV01682. The complaints are both in three counts, and the language of the two complaints is identical except for differing dates of employment. Both suits are described in the summons, part IV, as actions "to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment in violation of the Civil CT Page 10877 Rights Acts of 1964 and 1991, 42 U.S.C. § 2000e et seq., as amended, and the common law of Connecticut." In the first count, the plaintiffs Helen and Tina Ritch allege that their actions were brought to remedy discrimination on the basis of sex in connection with employment in violation of certain federal civil rights acts and the common law of this state; that in December, 1993, the plaintiffs filed complaints with the Connecticut Commission on Human Rights and Opportunities (CHRO) and with the Equal Employment Opportunities Commission (EEOC) alleging "acts of sexual harassment and unlawful discharge"; that the EEOC granted permission to the plaintiffs to bring their claims in federal court; that between June, 1992, and October, 1993, Sheriff Mohamed "made frequent obscene, lewd and lascivious remarks, requests and gestures to [the plaintiffs] and sexually assaulted [them]; that these remarks and gestures created a "sexually harassing workplace;" that the plaintiff in this present suit, as the employer, failed to "supervise" Mohamed or prevent him from "engaging in sexually harassing conduct;" that as a result of the "sexual harassment in [the] workplace" the plaintiffs suffered "mental anxiety, distress of mind and humiliation;" and that such conduct violated General Statutes § 46a-60 (a) (8) and the federal Civil Rights Acts of 1964 and 1991.
In the second count of the complaint, the Ritches alleged that the employer, Springdale Donuts, Inc., the plaintiff herein, was negligent in that it retained Mohamed as an employee when it knew about his conduct and/or should have known that his conduct could harm other employees, and did nothing to remedy the situation. In the third count of the complaint the Ritches allege that Mohamed intended to inflict emotional distress upon them.
In the present action, there is no explicit reference to the defendant insurers' agreement to defend and indemnify the plaintiff insured with regard to claims of negligence based on sexual harassment by one of its employees against his co-workers. The plaintiff, however, points to the following provisions of the three policies issued by the defendant insurers: (1) coverage B of the commercial general liability policy regarding personal injury; (2) part one of the workers' compensation policy; and (3) the umbrella policy. The plaintiff also seeks damages based on its claim that the defendants violated the covenant of good faith and fair dealing by not acting more promptly to forward to it the legal papers regarding the Ritch actions, and in not advising of its decision not to defend the underlying lawsuits. CT Page 10878
As to coverage B of the commercial general liability policy, the insurer agreed to pay any sum that the insured became obliged to pay because of "personal injury." Section V, definition number 10 (d) (e), defines personal injury as an injury other than bodily injury, and refers to the "publication" of material that "slanders" or violates a person's "right to privacy." The plaintiff argues that the allegations of the Ritch complaints involve slander and the right to privacy. There is no claim, however, by the Ritches either that they were slandered by Mohamed or by the plaintiff in this action, or that their right to privacy was violated by either defendant in the federal actions. The complaints by the Ritches refer to sexual harassment and resulting mental anxiety, distress of mind and humiliation, but not to the publication of material that slanders a person or violates a right to privacy. Neither defendant in the federal action "published" any material. Therefore, the commercial general liability policy does not cover a claim of sexual harassment by the plaintiff's employees against a co-worker including a claim of negligence against the plaintiff for lack of proper supervision of such co-worker.
Part One of the workers compensation policy provides benefits to an employee of the insured who is injured in the course of his or her employment based on the workers compensation law. The Ritch suits claim that they were sexually harassed by a fellow employee, not by the plaintiff in this action. The Ritches did not claim workers compensation benefits for the injuries they sustained as the result of Mohamed's conduct or the employer's negligent supervision of the employee. If they had made such a claim against their employer, the plaintiff herein, then the workers compensation insurance maintained by the plaintiff could be involved. ("We will pay promptly when due the benefits required of you [the insured] by the workers compensation law.") In the absence of such a claim, the plaintiff in this action is not entitled to be defended or indemnified under part One of the workers compensation policy.
The umbrella or excess liability policy does not apply because there is no coverage under either of the underlying liability or workers compensation policies. ("This insurance is excess over any other valid and collectible insurance . . . "). Moreover, an exclusion in this policy relates to mental anguish or humiliation "related to the employment" of any person by the insured. (Exclusion 3 (c)). Another exclusion, 3 (h), provides CT Page 10879 that the excess policy does not cover discrimination "related to the employment" of any person by the insured. Thus, sexual harassment in the workplace is not a covered risk under the terms of the umbrella policy.
With respect to the second count of the complaint concerning the covenant of good faith and fair dealing, the plaintiff claims to have been damaged because (1) the defendants took too long to notify the plaintiff of the Ritch actions in the federal court and to forward the suit papers to the plaintiff; and (2) the defendants failed to notify the plaintiff in a timely fashion that they were disclaiming liability. The facts behind this claim are not disputed by the parties to this action and the relevant dates are as follows: (1) the Ritches purported to serve the plaintiff in this action by serving CT Corporation Systems of Hartford on August 25, 1995; (2) the suit papers were sent to the defendants in September and October, 1995; (3) the Ritches served motions for default on the plaintiff in this action on October 18, 1995, and defaults entered on October 23, 1995; (4) the defendants sent disclaimer letters to the plaintiff on October 19, 1995; (5) on October 31, 1995, the plaintiff requested that the defendants provide it with copies of the Ritch lawsuits; (6) the Ritches moved for judgment on December 8, 1995; (7) on December 12, 1995, the plaintiff requested that the defendants forward copies of the Ritch papers to it; (8) the defendants sent the Ritch lawsuit papers to the plaintiff on December 8, 1995; (9) on December 29, 1995, an attorney filed an appearance for the plaintiff in the federal suits, and filed motions to dismiss the federal actions by the Ritches on the basis that the Ritches had not served the designated statutory agent for service of process for Springdale Donuts, Inc.; and (11) the Ritch lawsuits were settled, $13,000 for Helen Ritch and $4,500 for Tina Ritch.
No matter what one concludes about the dispatch of the defendants in handling the lawsuit papers, the plaintiff has not demonstrated any damage as it admits that it settled the Ritch suits for a "cheap" sum because of the motion to dismiss it filed. It is ironic that the plaintiff is accusing the defendants of tardiness at the same time it claims that it obtained a favorable settlement by its "strategy" of not contacting the Ritches until after certain time limitations imposed by federal procedure had allegedly expired. In any event, bad faith and unfair dealing has not been demonstrated as the three policies do not provide coverage as claimed by the plaintiff. CT Page 10880
For the reasons set forth above, the defendants did not have a duty to defend the plaintiff against the allegations brought by Helen and Tina Ritch in the federal law suits, and hence no obligation to indemnify the plaintiff or to respond in damages under any theory offered by the plaintiff. Therefore, judgment enters in favor of the defendants, and costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 27 day of October, 1997.
William B. Lewis, Judge