[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action in three counts by the plaintiff former employee, Thomas S. Lux (Lux), against the defendant former employer Environmental Warranty, Inc. (EWI). Count one of the amended complaint is a claim for severance pay. Count two seeks to recover vacation pay. Count three alleges non-receipt of termination notice as called for under the employment contract. The defendant counterclaims against the plaintiff for breach of fiduciary duty.
The facts are as follows. The defendant Environmental Warranty, Inc. was formed in 1992 by Charles Perry, its president. EWI brokers insurance for carriers who insure against environmental risks associated with commercial real estate. Only three major insurance carriers issue such insurance policies. They are Safeco Insurance Company, AIG and Zurich. In 1991 and 1992 the plaintiff Thomas Lux was approached by Charles Perry to join the company as its Senior Technical Officer to review engineering reports for commercial properties that would be insured by Safeco Insurance Company. Safeco did not have its own in-house technical officer to review such reports needed to evaluate the risks and underwrite the policies. AIG and Zurich each had their own in-house technical officer. Perry knew Lux as a friend and colleague and was aware Lux had experience in that area. Lux joined EWI in 1992.
In 1994, Lawyers' Title, a new investor in EWI, required all senior staff with EWI have formal employment agreements. Early in 1994 written employment agreements were prepared and discussed with all senior staff members. These were Lux, Perry, William Gildea, Robert Clifford and Anthony Drescher. The transaction also included options for Gildea, Clifford, Drescher and Lux to purchase stock in EWI.
Lux was one of two who retained counsel to review the proposed employment agreement. Lux provided comments and requests for modification. Lux executed his agreement on April 15, 1994. CT Page 12845
In 1995 EWI received indications from Safeco that it would be ending its relationship of issuing environmental insurance for policies submitted by EWI. In the fall of 1995 it became apparent that Safeco was going to terminate. Perry discussed the situation with Lux. Without Safeco Lux's expertise would not be needed. Perry told Lux that at the end of the term of his contract, his employment agreement would not be renewed. Lux was encouraged to use the Environmental Warranty office to find a new position, to make calls, to prepare his resume and to go out on interviews. During this period no new Safeco business came in leaving Lux free during office hours to concentrate on his job search.
By letter dated January 29, 1996 Lux was advised that EWI would not be renewing Lux's contract on March 31, 1996 and that his employment would, therefore, be terminated effective April 1, 1996. Lux was paid his salary through March 31, 1996. March 29, 1996 was Lux's last day of work at EWI. Lux did not report for work at EWl thereafter.
On May 1, 1996 Lux by letter made a demand for six months' severance pay and accrued vacation pay through March 31, 1996. Lux also asked to have his stock option agreement extended. The stock option agreement was extended and Lux purchased 100 shares in July 1996. As for the requested severance pay and accrued vacation pay Lux was advised by letter dated May 3, 1996 that he was not entitled to severance pay as he had been terminated on the expiration date of his employment agreement, not after the expiration date. As for the question of accrued vacation, Lux was told that the question of accrued vacation was being reviewed. Lux was asked to call Charles Perry the following week. The instant action was initiated on May 17, 1996, seeking severance pay and subsequently amended with a demand for vacation pay.
Plaintiff's claim for severance pay is grounded in the following three sections of the Employment agreement:
 2.2 Term of Employment. EWI agrees to continue the employ of Employee, and Employee agrees to accept such employment with EWI for a term commencing April 1, 1994 (the "Commencement Date") and continuing until March 31, 1996 (the "Expiration Date"), unless sooner terminated as provided in this Agreement (the "Employment Period"). In addition, subject to Section 2.6.19e) and (f), this Agreement shall be extended automatically and without further action for an additional one (1) year period, and CT Page 12846 thereafter shall continue to be extended for successive one (1) year periods as of each anniversary of the Expiration Date (in any such case, the "Extension Period"). Any extension period shall be included within the definition of "Employment Period".
2.6 Termination
 2.6.1 The Employment Period shall be terminated upon the first to occur of the following events:
(a) Automatically upon the date of death of Employee;
 (b) By EWI upon the date of determination by EWl of the "permanent disability" of Employee as hereinafter provided;
 (c) By EWI upon the date of written notification by EWI of Employee that his employment will be terminated for "Cause" (as hereinafter defined);
 (d) By Employee upon the date on which Employee notified EWI that his employment will be terminated for "Cause" (as hereinafter defined);
 (e) By EWI at any time after the Expiration Date, upon the date ten (10) days following written notice by EWI to Employee of termination for any reason or no reason; or
 (f) By Employee at any time after the Expiration Date, upon the date thirty (30) days following written notice by Employee to EWI of termination for any reason or no reason.
ARTICLE 5
SEVERANCE
 In the event Employee is terminated by EWI pursuant to the provisions of Section 2.6.1(e) hereof, Employee will receive a severance payment equal to two months of his current base salary as of the effective date of termination multiplied by the number of full years of service of Employee (measured from Employee's employment commencement date), provided the maximum period of severance pay shall be six (6) months (the "Severance Pay"). CT Page 12847 The Severance Pay will be paid to Employee in one installment thirty days following the Termination Date.
"A contract is to be construed as a whole and all relevant provisions will be considered together . . . a contract must be construed to effectuate the intentions of the contracting parties. . . In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish. (citations omitted, internal quotation marks omitted)." Barnardv. Barnard, 214 Conn. 99. 109-110 (1990), 570 A.2d 690 (1990).
". . .the mere fact that the parties advance different interpretations of the language in question `does not necessitate a conclusion that the language is ambiguous, (citation omitted)'." Stephen v. Pennsylvania General Insurance Co.,224 Conn. 758, 764 (1993), 621 A.2d 258 (1993). "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity . . . The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. (citations omitted. Internal quotation marks omitted)." Zullo v. Smith, 179 Conn. 596
(1980), 427A.2d 409 (1980).
"Parties generally do not insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible. (citation omitted)." HatchoCorporation v. Della Pietra, 195 Conn. 18, 23 (1985), 485A.2d 1285 (1985).
Counts one, two and three are claims grounded on the Employment Agreement between Lux and EWI. We apply the aforesaid principles to the contract issues of the instant case.
It is the plaintiff's contention that the only way EWI could not renew his employment agreement was to give notice within the ten day window provision of Section 2.6(e) of the employment agreement. Section 2.6 captioned Termination subsection (e) reads as follows:
 (e) By EWI at any time after the Expiration Date, upon the date ten (10) days following written notice by EWI to Employee of termination for any reason or no reason;
CT Page 12848
Under the plaintiffs reading of Section 2.6(e) EWI would have had to let the March 31, 1996 day go by and between April 1, 1996 and April 10, 1996 give Lux written notice of termination.
Plaintiff's reading flies in the face of the plain language of the contract. Section 2.2 captioned Term of Employment provides for a Term of Employment beginning April 1, 1994 and continuing until March 31, 1996. March 31, 1996 is identified as the Expiration Date. That section goes on to state "unless sooner terminated as provided in this agreement (the "Employment Period"). The employment period is designated as the period from April 1, 1994 until March 31, 1996. Thus, under the provisions of this section if employment is terminated sooner than March 31, 1996, termination would have occurred within the employment period, in which event the provisions of Section 2.6.1 would come into play.
Section 2.6.1 captioned Termination states in subsection 2.6.1 "the Employment Period shall be terminated upon the first to occur of the following events:" It is only a termination which takes place within the Employment Period which triggers one of the (a) through (f) provisions enumerated under 2.6.1. Subsection 2.6.1(e) which is the one being relied on by the plaintiff is not applicable since there was no termination of his employment within the Employment Period designated in Section 2.2, that is April 1, 1994 until March 31, 1996.
Since the provisions of Section 2.6.1(e) do not apply there is no basis for a claim for severance pay under Article 5 of the Agreement captioned Severance. That section is prefaced with the clause, "In the event Employee is terminated by EWI pursuant to the provisions of Section 2.6.1(e) hereof . . ."
If in fact the defendant had waited until after March 31, 1996 to put the plaintiff on notice that his contract was not going to be renewed, the automatic renewal provision of Section 2.2 would have been triggered and beginning April 1, 1996, the plaintiff would have begun a one year Employment Period. Termination at any time during this new employment period, April 1, 1996 until March 31, 1997, would have brought into play the provisions of Section 2.6.1 Termination.
On the facts found and applying these to the applicable rules of law cited earlier dealing with construction of contract CT Page 12849 language, this court finds that the plaintiff's employment expired with the conclusion of his employment period on March 31, 1996, and that he is, therefore, not entitled to severance pay.
The plaintiff accrued vacation time for the period January 1, 1996 through March 31, 1996 totaling 5 days. During that time two days were taken as funeral leave. The remaining three days at $365.75 per day totaled $1,097.25. From the Fall of 1995 until March 31, 1996, the plaintiff was in and out of the EWI office. He went on job interviews. In the office he worked on his resume, made calls connected with his job search and used secretarial help as needed for his job search materials. All of this was done with EWI's blessing and on their time. Lux had been told by Perry some months earlier that Lux's employment contract was not going to be renewed and that he could and should use time in the remaining months to look for another job. Lux did not volunteer that he had accrued vacation time and Perry did not ask. Lux did not raise the question of payment of accrued vacation time until several weeks after March 31, 1996. This was done by letter dated May 1, 1996 requesting severance pay and accrued vacation time. EWI responded by letter dated May 3, 1996, that Lux was not entitled to severance pay and that as to accrued vacation time. Lux should call Perry the following week. Not hearing from Lux, Perry followed up with a letter dated May 13, 1996, in which he computed the value of the three vacation days due as $1,097.23. Lux did not get back to Perry but instead made claim by way of an amendment to his original action brought on May 17, 1998, for accrued vacation time encompassing not only the period from January 1, 1996 through March 3, 1996, but, as well, for a period from April 1, 1996 through to the present time. Count three of the amended complaint alleges Lux's contract of employment never terminated and that he was entitled to salary and all fringe benefits to the present time.
On the facts found this court concludes the plaintiff is not entitled to the penalties claimed under Section 31-72 of the Connecticut General Statutes. The plaintiff did not have to bring a civil action to collect accrued vacation time for the period from January 1, 1996 through March 31, 1996. EWI might well have assumed that such time as Lux devoted to his job search in those months would have eaten up any vacation time which would have accrued. Lux did nothing to dispel this assumption. When he got his last pay check he did not let EWI know he expected to be paid for what he considered to be still unused vacation time. It was not until he sought severance pay some months later that the CT Page 12850 question of vacation pay came up. Thereafter, upon checking its records and finding three vacation days still of record though surprised that Lux would even be asking in view of the amount of time EWI allowed him for his job search, offered to pay them. The plaintiff rejected the offer having amended his complaint with an additional count which expanded the period for which he sought vacation time.
Judgment may enter in favor of the defendant, Environmental Warranty. Inc. on counts one, two and three of the complaint.
The court addresses next the counterclaim of Environmental Warranty. Inc. which claims shareholder's breach of fiduciary duties. The facts are as follows: The defendant and counter claimant, Environmental Warranty, Inc. (EWI), is a closely held corporation organized under Connecticut law. The plaintiff and counter defendant, Thomas Lux, on April 15, 1994 entered into an agreement entitled, Employee Stock and Employment Agreement. Under this agreement Lux acquired among other things an option to purchase shares of EWI. In July, 1996, Lux exercised his option and acquired one hundred (100) shares of EWI. He was then one of three common shareholders in the company.
On May 17, 1996 Lux sued EWI for severance pay and accrued vacation time. During the pendency of that action, which is the instant case-in-chief, counter claim defendant's attorney, by letter dated May 8, 1997, to counter claim plaintiff's attorney wrote as follows:
 I have reason to suspect that substantially large sums of money are being extracted by Mr. Perry from Environmental Warranty, Inc., and that perhaps he has even set up one or more phantom companies. I will be compelled to pursue same in the event we secure a judgment or are unable to satisfy our claim in full. Also. we will reserve the right to pursue those remedies at the present time to the extent that we develop appropriate information.
If you should have any questions, please feel free to contact me.
When Perry received the letter he called several directors to disclose the letter to offer them an opportunity to check whatever they wanted to, and to put them on notice of its possible impact on the company since EWI was exploring potential sale of the company. At least two weeks were devoted to proving the allegations in the letter were not true. This was time Perry CT Page 12851 took away from his job, time which was lost to the company.
Lux had based his claim that substantially large sums of money were being extracted by Perry from EWI, on Lux's extrapolation from EWI's financial statements and assumptions as to Perry's salary. As for the phantom companies into which money was to have been funneled, Lux identified ENVIRO TRAK, a business plan which never got beyond the concept stage because the EWI Board had not been interested in pursuing it. Thus, there were no phantom companies, and Perry's salary, based on an employment agreement, had gone from $150,000 to $125,000 to $100,000 because the company had not been doing as well in 1997.
EWI's claim of breach of fiduciary duty is premised on Lux having been one of five key people in the company while he was there, as well as his being a shareholder. Lux contends that as a minority shareholder he has no fiduciary duty to the company and thus cannot breach that duty. Lux contends also that the letter was in the nature of a complaint made by a shareholder against a corporate officer; that, as such, Perry through his attorney might have sought more details about the claims being made in the letter before publishing it to his Board of Directors and pursuing the course of action which he did.
At the time the letter was sent the parties were involved in the instant litigation. The counterclaim Plaintiff. EWI claims the letter was an attempt to push a settlement of Lux's claim by asserting suspicions of wrongdoing by Perry which would come out if a judgment secured could not be satisfied. The letter was a communication between the parties' attorneys only. That Perry reacted as he did, first publishing the letter to the Board of Directors and then putting in his time and company resources to dispel any concerns the Board might have about him or the company after seeing the letter, cannot be laid at Lux's doorstep in the context of a breach of fiduciary duty to EWI.
EWI's claim that EWI was hurt as a result of Lux's letter is not proven. There was passing reference to a possible sale of the company which could have been affected by negative information, with no further specifics. Time spent by Perry was not quantified or priced out. Had the issue of damages been reached the court would have been left to speculate. This of course the court would not have done. However, since this court finds that there was no breach of fiduciary duties by Lux we do not reach the damages issue. Accordingly, judgment may enter for CT Page 12852 the counterclaim defendant Lux on the counterclaim.
Hennessey, J.