FRANCES MARTONE *v.* FRANK M. MARTONE
(10420)

DUPONT, C. J., DALY and FOTI, Js.

Argued March 23—decision released July 14, 1992

*Gary I. Cohen,* with whom, on the brief, was *Lee Marlow,* for the appellant-appellee (defendant).

*Steven D. Ecker,* with whom, on the brief, was *Frederick S. Moss,* for the appellee-appellant (plaintiff).

DALY, J. The defendant appeals from the trial court's financial awards rendered in a marital dissolution action. The defendant claims that the trial court improperly (1) awarded expenses related to the marital residence as lump sum alimony, (2) awarded lump sum alimony in contradiction to a previous agreement between the parties accepted by the court that limited the remaining issues to an award of periodic alimony and child support, (3) awarded damages to the plaintiff, which is beyond the scope of the court's jurisdiction in a marital dissolution action, (4) ordered an

arrearage in child support to be paid as lump sum alimony, and (5) failed to recognize that the stipulation between the parties gave the plaintiff assets worth $200,000 more than the assets given to the defendant. In her cross appeal, the plaintiff challenges the court's award of child support. She claims that the court incorrectly computed the defendant's income by taking into account a federal income tax deduction reported in his financial affidavit even though the defendant admitted that he had not paid federal income taxes for a number of years. The plaintiff further claims that the court's award of child support was improperly based on the defendant's pretrial financial affidavit instead of on the defendant's trial testimony, which established a higher income.

The following facts are pertinent to this appeal. On March 31, 1989, the plaintiff sought a dissolution of her marriage to the defendant. At the time of the dissolution, there were three minor children issue of the marriage, ranging in age from fourteen to eleven years. On January 9, 1991, the parties entered into a stipulated agreement, which they characterized as a resolution of equitable distribution issues. The agreement, which consisted of oral and written stipulations, provided for joint custody and visitation of the children as well as for the distribution of the parties' property.[1] After reading the agreement into the record, the court questioned both parties about their understanding of

---

[1] The written part of the stipulated agreement provided: "1. Husband gets ownership of Edwards St.; his Mercedes and his truck; and one-half the cash on deposit. 2. Wife gets ownership of Foster St. and Cottage St., with all expenses paid up to date as of date of judgment - from 2/1/91. 3. Parties to transfer Cape Cod property into trust for benefit of the children equally. Parties to be co-trustees and they will equally pay the expenses thereof. 4. Husband transfers by QDRO $4,000 from his IRA to wife's IRA. 5. Wife keeps her van and contents of the house. Husband transfers Buttermilk Lane house to wife and she indemnifies him in connection therewith. 6. Each pays ½ cost of medical insurance for children. If either gets

the agreement. Both parties asked the court to accept the stipulated agreement. The court rendered a judgment according to the parties' stipulation, dissolving the marriage, establishing custody and visitation, and distributing the parties' property. The court retained jurisdiction over the matter as to alimony and child support. The defendant contends that the court retained jurisdiction only as to periodic alimony while the plaintiff contends that the court retained jurisdiction to award both periodic and lump sum alimony. The court understood its role to include discretion to order lump sum alimony. The trial court heard testimony about the unresolved issues at hearings on April 5, 12 and 23, 1991. A review of the record reveals that the parties, during their marriage, acquired houses and rehabilitated them as rental units. The parties were able to generate income from the rental of these apartment units, which was distributed according to the stipulated agreement. The court found that both parties were skillful in developing these properties as rental units.

The plaintiff received the marital residence located in Branford as part of the stipulated agreement. The plaintiff testified that the parties moved into the marital residence in December, 1985. In April, 1989, the defendant left the plaintiff. The plaintiff spent approximately $30,000 during the summer of 1990 to repair the marital residence and another $2000 after the property distribution agreement was rendered on Janu-

medical insurance for children as an incident of his/her employment then he/she will provide it for the children. They will equally share uninsured medical and dental expenses for the children, including orthodontia and agreed upon counselling expenses. 7. Husband will pay wife $3,750 within six months as a contribution toward family bills. Wife will indemnify husband in connection with the Sears, and Mastercard accounts. 8. They shall continue to cooperate in connection with claims arising out of an investment known as Castle Rock and if there should be any liability established, they shall be equally liable. 9. Transfers of the real estate shall be made as of February 1, 1991, and existing pendente lite orders stay in effect until then."

ary 9, 1991. The defendant did not contribute to the cost of the repairs. The plaintiff also testified that another $25,000 for future repairs was necessary for the marital residence. The plaintiff was aware of the condition of the house at the time that she entered into the stipulated agreement. The defendant's mother bought a house in Branford where the defendant lived during these proceedings. The defendant's mother made a down payment of $25,000 and obtained a mortgage for the balance of $100,000. The defendant makes the mortgage payments.

The defendant testified that he had not paid any income tax from 1986 until the time of this action. The defendant claimed to have received a tax credit because the parties rehabilitated the rental properties. On his financial affidavit, the defendant claimed a reduction of his net income for income tax. The court found that neither party had paid federal income taxes in the recent past and that they were unlikely to begin paying federal taxes in the future.

In its memorandum of decision, the court noted that both parties were capable of acquiring and rehabilitating properties to accumulate income. The court, referring to the plaintiff, stated that "[w]ith her realty holdings as collateral and a proven track record, she will be able to get mortgages and go on if she so decides." The court found that the defendant was responsible for the breakdown of the marriage. The defendant was ordered by the court to maintain a life insurance policy for the benefit of his three children in the sum of at least $100,000 until the youngest child reached majority. The court ordered the defendant to pay $16,000 to the plaintiff, which constituted half of the $32,000 spent on repairing the family residence. The defendant also was ordered to pay another $12,500 to the plaintiff as contribution toward the estimated cost of further remodeling of the marital residence. The

court also awarded the plaintiff $9500, representing contribution toward the estimated cost for a new automobile. The court ordered the defendant to pay the plaintiff $15,000 "as damages for his conduct in brutally causing the breakup of this marriage." The court set the child support award at $73 per child per week for a total of approximately $220 per week. By agreement of the parties, the child support award was retroactive from February 1, 1991.

In response to a motion for articulation filed by the plaintiff, the court clarified its financial orders. The court noted that the $15,000 ordered as damages was in fact an award of alimony. The court emphasized that the $2874 child support arrearage resulting from the parties' agreement that the award would be effective as of February 1, 1991, was just that and not part of the lump sum alimony award. The court further stated that it did not include in the defendant's income the monthly rental of $470 from the temporarily vacant apartment on Edwards Street. The defendant appealed from the court's decision and the plaintiff brought a cross appeal.

I

The defendant claims that portions of the trial court's lump sum alimony award constitute a modification of the previous nonmodifiable judgment. The defendant argues that the $16,000 award for past repairs and the $12,500 award for future repairs of the marital residence and the award of $9500 for the purchase of a new automobile were impermissible modifications of the property distribution that the parties entered into in their stipulated agreement on January 9, 1991. The defendant argues that this violated General Statutes § 46b-86.[2] We agree with the defendant that the awards

[2] "[General Statutes] Sec. 46b-86. (Formerly Sec. 46-54). MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the extent that the decree precludes modification, any final order for the peri-

of $16,000 and $9500 constituted an improper modification of the property distribution judgment. On this basis, we reverse those aspects of the trial court's financial awards.

The plaintiff received the marital residence pursuant to the stipulated agreement that divided ownership of the parties' property. According to the agreement, each party retained ownership of their respective automobiles. On January 9, 1991, at the time that the parties asked the court to accept the property distribution agreement, the plaintiff had already spent approximately $30,000 of her own money on the marital residence. The plaintiff had been living in the house for about six years at the time she entered into the property distribution agreement. The plaintiff knew of the condition of the house and the need for additional work that was likely to cost another $25,000. Both parties contributed to the acquisition of the income producing properties, which were divided equally by the agreement. The plaintiff received the additional asset of the marital residence. In the stipulated agreement, the plaintiff agreed to indemnify the defendant in connection with the transfer of the marital residence. The payment of $3750 for family bills by the defendant was included in the stipulated judgment but the plaintiff did not attempt to recover any amount of the money she had already spent on the marital residence.

The court questioned both parties concerning the property distribution agreement. The plaintiff stated it was fair and did not request any compensation for the repairs she had made on the marital residence that

odic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . . This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. . . ."

she was receiving pursuant to the agreement. General Statutes § 46b-66 provides in pertinent part that "[i]n any case under this chapter where the parties have submitted to the court an agreement concerning the . . . disposition of property, the court shall inquire into the financial resources and actual needs of the spouses . . . in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances." The court fulfilled its duty to inquire into the property distribution agreement. The court found the agreement to be fair and equitable. "If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . ." This agreement was in writing and was incorporated by reference in the court's decision. The court's acceptance of the agreement transformed it into a binding order as to property distribution. *Sands* v. *Sands,* 188 Conn. 98, 102–103, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983); *Calorossi* v. *Calorossi,* 4 Conn. App. 165, 168, 493 A.2d 257 (1985).

A trial court does not have to make financial awards such as alimony and property distribution at the time it renders judgment dissolving the parties' marriage as long as the court expressly retains jurisdiction over the matter. *Ross* v. *Ross,* 172 Conn. 269, 272–73, 374 A.2d 185 (1977). In *Ross* v. *Ross,* supra, 270, the trial court dissolved the parties' marriage but specifically retained jurisdiction for a subsequent determination of alimony, custody and child support. Here, the trial court expressly retained jurisdiction over this matter as to alimony and support after it dissolved the parties' marriage. Under General Statutes § 46b-86 (a), a trial court in a marital dissolution action does not retain continuing jurisdiction over any portion of the judgment that

constitutes an assignment of property from one party to another party pursuant to General Statutes § 46b-81.[3] *Bunche* v. *Bunche,* 180 Conn. 285, 289, 429 A.2d 874 (1980). The stipulated agreement assigned all of the parties' property, including the automobiles and the marital residence. The court's award of money for past repairs and the purchase of an automobile constituted improper modifications of the parties' property distribution agreement. These awards of alimony would have been within the court's discretion if there were not an existing property distribution. In the present case, however, because of the earlier property distribution, this portion of the alimony award violated *Bunche* v. *Bunche,* supra, and, therefore, was a prohibited modification of a property distribution judgment.

An award of alimony is based primarily on a spouse's continuing duty to support. *Hotkowski* v. *Hotkowski,* 165 Conn. 167, 170, 328 A.2d 674 (1973). General Statutes § 46b-82 governs the award of alimony and specifically states it may be in addition to a property distribution award pursuant to § 46b-81. The court, when awarding alimony is required by § 46b-82 to consider each spouse's needs. The award of $12,500 for further repairs of the marital residence was within the court's discretion under § 46b-82. The award of $16,000 for past expenses related to the marital residence does not fall within the defendant's duty to support the plaintiff.

---

[3] "[General Statutes] Sec. 46b-81. (Formerly Sec. 46-51). ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect. . . ."

We recognize that a trial court in a marital dissolution action has broad discretion when fashioning financial orders such as alimony. *Rostain* v. *Rostain,* 214 Conn. 713, 716, 573 A.2d 710 (1990); *Cahn* v. *Cahn,* 26 Conn. App. 720, 731, 603 A.2d 759, cert. granted, 221 Conn. 924, 608 A.2d 688 (1992). The court's broad discretion was limited in this case to a determination of alimony and support. It had no jurisdiction and, therefore, had no discretion to alter the prior distribution of assets that had been the subject of the parties' stipulation. The court's financial awards to the plaintiff for past repairs and for the acquisition of an automobile were separate and distinct from its other proper awards of alimony. Because the court had no discretion to award the plaintiff anything for amounts already expended on the marital residence or for an automobile, and because there was no abuse of discretion as to the other portions of the alimony award, a remand to review all the financial orders is unnecessary in this case. See *Cuneo* v. *Cuneo,* 12 Conn. App. 702, 710–11, 533 A.2d 1226 (1987).

## II

The defendant claims that the trial court's award of $15,000 as damages was improper because such an award is beyond the scope of the court's jurisdiction in a marital dissolution action. We reject this claim.

In its memorandum of decision, the court referred to damages in its award of $15,000 for the defendant's conduct in causing the breakdown of the marriage. The plaintiff filed a motion for articulation concerning this portion of the court's financial award. The plaintiff requested that the court articulate whether "it intended that amount to reflect a portion of the alimony attributable to defendant's role in causing the breakup of the marriage pursuant to General Statutes § 46b-82, or rather whether the amount was rendered as 'damages'

in the sense of compensation for personal injury or something else?" The court responded that the $15,000 award constituted a portion of the award of alimony and not an award of damages.

Under § 46b-82, the court, when awarding alimony, should consider "the causes for the . . . dissolution of the marriage . . . ." Therefore, the defendant's conduct that contributed to the dissolution was relevant and could provide a basis for an award of alimony. Although the court initially referred to damages when awarding the $15,000, its response to the articulation clarified the meaning of the order. "The characterization which is later in time should control, and is more consistent with the trial court's actions, and with the parties' testimony." *Dubicki* v. *Dubicki,* 186 Conn. 709, 715, 443 A.2d 1268 (1982). This portion of the court's award of alimony was proper.

## III

In her cross appeal, the plaintiff claims that the trial court's award of child support was improper because there was a deduction from the defendant's gross income for the payment of federal taxes that were not in fact paid by the defendant. The following facts are relevant to this claim.

The defendant submitted a child support guidelines sheet on April 24, 1991. According to the defendant's calculations, his gross income amounted to $695.92. He then deducted $194.85 from his gross income which constituted the payment of federal income taxes and property expenses. The plaintiff's gross income was $1,133.07 with $360.41 deducted from her gross income for federal income taxes and property expenses. The guidelines computation established the defendant's child support obligation at $219.51 for all three children per week. On May 10, 1991, the plaintiff submitted an amended child support guidelines worksheet to

the court. This worksheet also gave both parties a deduction in their income for the payment of federal income taxes. According to the amended guidelines, the defendant should be responsible for $302.10 per week for all three children. The court ordered the defendant to pay $220 per week in child support for all three children. The court did not make a finding that the application of the child support guidelines would be inappropriate or inequitable.

The court accepted the amount established in the guidelines worksheet submitted by the defendant on April 24, 1991. The court was free to reject the amount of child support called for in the plaintiff's amended guideline worksheet. The defendant's gross income is reduced by $194.85 on the basis of his federal income tax obligation. The defendant testified that he has not paid federal income taxes since 1986. The defendant had not paid federal taxes because he had not filed income tax returns for 1988 and 1989. It is unclear whether the defendant was ever going to have to pay federal income taxes for the period from 1986 until the time of his testimony. The court, however, found that neither party had paid federal taxes "in the recent past and there is no reason to assume they will start in the immediate future."

The trial court was required by General Statutes § 46b-215b (a) to consider the child support guidelines in reaching its award of child support. *Battersby* v. *Battersby*, 218 Conn. 467, 470, 590 A.2d 427 (1991). The figure established by the guidelines becomes a rebuttable presumption of an award of child support according to § 46b-215b (a). The court must make a specific finding that application of the child support guidelines would be inequitable or inappropriate if it wants to rebut the presumption established by the guidelines and award an amount that differs from the application of

the guidelines. General Statutes § 46b-215b (a); see *McHugh* v. *McHugh,* 27 Conn. App. 724, 728–29, 609 A.2d 250 (1992).

The child support awarded by the court falls within the guidelines figure submitted by the defendant. Those calculations included a deduction from income representing the payment of federal income taxes. The allowance of this deduction directly contradicts the court's finding that neither party has paid or will pay federal taxes in the future. The court's award of child support, which includes a deduction from income for the payment of federal taxes, is not supported by its findings. Thus, the trial court's award of child support was clearly erroneous. There was no basis in the court's findings for allowing the deduction of federal taxes from the parties' gross income to arrive at the award of child support. The award of child support is reversed and the matter is remanded for a new hearing to determine the defendant's child support obligation and any arrearage resulting from that award.

On the appeal, the judgment is reversed as to the award of $16,000 for past repairs and $9500 for the purchase of a new automobile and the case is remanded with direction to render judgment reducing the award of alimony by those amounts. On the cross appeal, the judgment is reversed as to the award of child support and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.