[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court as a limited contested dissolution of a marriage between the parties which occurred on March 2, 1968 at Hillsboro, Ohio. At that time, the wife's maiden name was Ruth Hixson. The defendant has resided continuously in this jurisdiction the twelve (12) months next before the filing of this complaint. Two children were born to the wife since the date of the marriage: Melinda M. Wolfe, born January 11, 1977, who at the time of trial had reached the age of majority; and James Steven Wolfe, born January 7, 1980. No federal, state or municipal agency is contributing to the support of either party. The court finds that the marriage has broken down irretrievably and a decree may enter on the grounds of irretrievable breakdown.
At the time of trial, both parties were fifty (50) years of age. The plaintiff enjoys good health. The defendant's physical CT Page 7139 health is also good despite some arthritic problems. Emotionally, she describes herself as "recovering" and working at getting her self-esteem back through counseling. Her testimony reflected a genuine sadness and sense of loss due to the failure of her marriage.
The parties' descriptions of the problems in their marriage were quite similar, primarily revolving around differences in personality, religion and parenting styles. Although the defendant concedes that there were difficulties in the marriage as far back as the early 1980's, she did not view them as irretrievable. It is clear that their differences gradually resulted in communication problems which ultimately led to the breakdown of their marriage, and the court assigns no greater fault in the breakdown to either party.
The parties met in June of 1967, and married in March of 1968 because Mr. Wolfe was going to Vietnam. After his return in May of 1969, he attended school full-time for approximately six (6) years. During that time, he was employed and helped to supplement Mrs. Wolfe's earnings as a teacher in Ohio, which provided the primary means of family support. Mrs. Wolfe continued to teach until the birth of their daughter Melinda in 1977. Both parties indicate that it was a joint decision for Mrs. Wolfe to stop working at that time.
After Steven's birth and while he was in nursery school, the defendant taught nursery school for one year. The parties moved to Connecticut in 1986 as a result of a job opportunity for Mr. Wolfe. Mr. Wolfe lost this job and, in January of 1988, started his own consulting business at which, according to Mrs. Wolfe's testimony, he worked very hard to support the family. This was a very stressful period for the Wolfes. Mrs. Wolfe attempted to get a teaching position at this time, only applying in the Town of New Fairfield so as to be close to home for Steven who was then in second grade. She did not obtain a teaching position but did do some substitution work. She continued to apply for teaching positions but always only in New Fairfield due to ongoing disciplinary problems with Steven which required close attention and supervision. During the marriage, she also was on call with Proctor Gamble to test products, and taught adult education for approximately one year.
For the past two years, Mrs. Wolfe has been employed in a general office position, working five (5) hours per day for a CT Page 7140 total of twenty-five (25) hours per week, making $8.25 per hour. Her duties include answering the phone, taking phone applications, finding files and writing up applications. Although she was initially pleased to get this job, it is apparent from her description of her duties that Mrs. Wolfe's position is not particularly satisfying or challenging to her. She has applied for teaching positions in Newtown, Danbury and Ohio, answered job ads in the paper and even attempted to obtain work as a teacher's aide without success.
She holds both a Bachelor's and a Master's degree in education and a lifetime certification to teach in Ohio; however, further testing would be required in order to obtain a job there. Her certification to teach in Connecticut is provisional only and is good through 1995. This would allow her to obtain a teaching position in this state, assuming such a position were both available and offered to her. Mrs. Wolfe expects to work on a full-time basis after the dissolution, but questions the likelihood of ever obtaining a teaching position again. She cites her age as a detriment in view of the fact that many school districts are now self-insuring. She also believes that she does not have the current skills needed to teach in Connecticut and would need to be tested, relicensed, and take certain courses in language arts, math, computers, and possibly some area(s) of specialization. She fears that the additional credits attained by virtue of this further training would make her less desirable as a candidate from a prospective employer's financial perspective, as she would then be potentially overqualified and hence overpriced in comparison to other (younger) candidates for available positions.
At the commencement of trial, Mrs. Wolfe indicated an intention and desire to relocate to Ohio to be closer to her family after the divorce. The parties' minor son was hospitalized for psychiatric reasons just prior to the last day of testimony in this matter. As a result of Steven's condition, Mrs. Wolfe indicated that she cannot now relocate to Ohio as she feels she needs to stay in Connecticut to be available for her son.
Mr. Wolfe is currently employed at Reader's Digest. His starting salary approximately three and one-half (3-1/2) years prior to trial was $55,000. At the time of trial, his gross wages were in excess of $72,000. He does not receive cost of living increases and is not eligible for bonuses. The current upper limit for an individual at his level with the company is $73,000 CT Page 7141 to $74,000. Mr. Wolfe is very satisfied with his employment but expressed a desire to leave his job after his son completes high school. He testified to his intention to provide funds toward the post high school education of both of the children. Due to the generosity of his Aunt Frances, each child already has approximately $42,000 designated for that purpose.
The parties presented to the court a written stipulation resolving all issues except alimony and counsel fees. Having reviewed the written agreement in great detail, the terms are found to be fair and equitable under all the circumstances. The provision for support of the minor child, Steven, is found to comport with the Child Support Guidelines. The written agreement dated January 13, 1995, is approved and incorporated in its entirety in the judgment of dissolution. The court will specifically retain jurisdiction to effectuate the provisions of article 10 of the stipulation.
In determining whether alimony shall be awarded, and the duration and amount of the award, the court is mandated by section 46b-82 of the General Statutes to consider the length of the marriage, the causes for the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties, as well as the division of property. "An award of alimony is based primarily on a spouse's continuing duty to support."Martone v. Martone, 28 Conn. App. 208, 216. The plaintiff concedes that an award of alimony is appropriate in this case considering the length of the marriage, but suggests that it should be limited in term and rehabilitative in nature based upon the defendant's educational background and earning capacity. Specifically, the plaintiff suggests a three year term of alimony to allow the defendant to gather the credentials necessary to enhance her teaching certification, in a decreasing amount to ease the defendant into the termination.
The defendant maintains that despite her educational credentials, the job opportunities which the plaintiff suggests are available, do not exist, and requests alimony terminable upon the death of either party or the her remarriage. The court finds merit in the arguments of both parties based upon the facts of this case. The defendant's earning capacity is at minimum $17,000 to $20,000 per annum, assuming full-time employment in a position comparable to that which she now holds on a part-time basis which provides annualized earnings of $10,725. Assuming full-time CT Page 7142 employment, the plaintiff will require a reasonable amount of time to obtain the additional necessary credentials which would make her eligible for more lucrative and challenging employment in the teaching field. The unambiguous purpose of rehabilitative alimony is to allow the recipient spouse to attain self-sufficiency.O'Neill v. O'Neill, 13 Conn. App. 300, 313. No evidence was presented at trial to establish an abundance of job opportunities for a person of the defendant's age and educational background which would provide such self-sufficiency from an economic perspective.
Considering all of the above, as well as the length of the marriage, the ages and health of the parties, their station, the amounts and sources of their income, their vocational skills, the expenses reflected on their respective financial affidavits, as well as the obligations which each have assumed and the division of property pursuant to the written stipulation, the court makes the following orders regarding alimony.
Effective January 17, 1995, pursuant to a stipulation of retroactivity and order of the court, the plaintiff shall pay to the defendant, until the death of either party, the remarriage of the defendant, or July 31, 1995, alimony in the amount of $2,500 per month.
Commencing August 1, 1995, the plaintiff shall pay to the defendant, until the death of either party, the remarriage of the defendant or July 31, 1998, alimony in the amount of $2,000 per month.
Commencing August 1, 1998, the plaintiff shall pay to the defendant, until the death of either party, or the remarriage of the defendant, alimony in the amount of $1,500 per month.
All payments shall be due on the first of each month.
Each party shall be responsible for their respective counsel fees.
Dennis, J. CT Page 7143