[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to recover a debt allegedly owed by the defendant to the plaintiff. On April 21, 1993, the plaintiff, Sandra V. Vibert, filed a complaint in a single count against the defendant, Mark David Atchley, to recover monies. The plaintiff alleges that on or about June 13, 1991, the defendant promised, in writing, to pay the plaintiff "$150.00 per week as a share of household expenses and additionally promised to pay for his long distance telephone calls each month, and to repay in a timely fashion any and all monies expended on his behalf." Plaintiff's Complaint, ¶ 3. The plaintiff also claims that on or about December 30, 1991, in writing, the defendant "confirmed that he owed the plaintiff . . . the sum of $4,825.00." Plaintiff's Complaint, ¶ 4. The plaintiff further alleges that on or about January 23, 1993, the defendant "confirmed his previous commitments and agreements, in writing, and committed to repay Sandra V. Vibert all monies on his arrearage for shared household expenses from 1989 to the present date (1/23/93), including an unaudited amount of not less than $6,600.00 or not less than $100.00 per week. . . ." Plaintiff's Complaint, ¶ 5. In CT Page 4332-KKKK support of this allegation the plaintiff relies on a document dated January 23, 1993, and purportedly signed by the defendant (annexed to the plaintiff's complaint as Exhibit A). Despite her demands, the plaintiff claims that "the defendant has failed and neglected to make payment to the plaintiff." Plaintiff's Complaint, ¶ 6. The plaintiff now seeks money damages plus interest in accordance with General Statutes § 37-3a and an order directing the defendant to make reasonable weekly payments.
On June 25, 1993, the defendant filed an answer with special defenses and counterclaims. With respect to the allegations in the fourth paragraph of the plaintiff's complaint to the effect that, on December 30, 1991, the defendant confirmed, in writing, that he owed the plaintiff the sum of $4,825.00, the defendant claims that he lacks sufficient knowledge or information to either admit or deny this allegation, and therefore leaves the plaintiff to her proof. The defendant admitted the remaining allegations of the plaintiff's complaint.
In his first special defense, the defendant claims that he was adjudicated bankrupt on or about June 7, 1991, in the United States District Court for the District of Connecticut and that the court granted the defendant a discharge in bankruptcy on or about June 23, 1992. The defendant alleges that the plaintiff's complaint in part, and/or in whole, accrued before the petition was filed. In his second special defense, the defendant alleges that the instruments or agreements described by the plaintiff in paragraphs 3, 4 and 5 of the complaint were obtained from the defendant by duress "of the plaintiff in wrongfully threatening the defendant with harm and endangering his person and/or property in consequence of which, and in fear thereof, the defendant executed and signed the same."
The defendant's counterclaim is divided into three counts. In the first count, the defendant alleges that between 1989 and January 1993, he delivered certain items of his personal property to the plaintiff "to be used by her and returned to the defendant." According to the defendant, although he "is now entitled to and has demanded the property, the plaintiff has neglected and refused to return it to the defendant and thereby the plaintiff has converted same to her own use." In the second count, the defendant alleges that "[s]ubsequent to January 1993, the plaintiff, without authority from the defendant, sold and/or disposed of the property, and thereby converted it to her own use." In the third and final count, the defendant alleges that CT Page 4332-LLLL "[t]he foregoing actions and/or conduct of the plaintiff constitutes a stealing of the defendant's property, and consequently subjects the plaintiff to the penalty imposed by General Statutes § 52-564." The defendant now seeks money damages and treble damages pursuant to General Statutes § 52-564.
On April 8, 1994, the plaintiff filed a reply to the special defenses and an answer to the defendant's counterclaim, denying the allegations of the first and second special defenses and denying the allegations of the defendant's counterclaim.
DISCUSSION
"A common law action in debt lies where there [is] due a sum certain or capable of reduction to certainty. . . . A principal characteristic of an action in debt, therefore, is that the sum to be recovered is certain and liquidated: Debt is an action founded on contract, express or implied, in which the certainty of the sum, or duty appears, and in which the plaintiff is to recover the sum in numero, and not in damages." (Citations omitted; internal quotation marks omitted.) Commissioner ofEnvironmental Protection v. Connecticut Building Wrecking Co.,227 Conn. 175, 184, 629 A.2d 1116 (1993).
I. Palimony
The term palimony "has meaning similar to `alimony' except that award, settlement or agreement arises out of nonmarital relationship of parties (i.e. nonmarital partners)." Black's Law Dictionary (5th Ed. 1979) p. 1000. "An award of alimony is based primarily on a spouse's continuing duty to support." Martone v.Martone, 28 Conn. App. 208, 216, 611 A.2d 896, cert. denied,224 Conn. 909, 617 A.2d 166, cert. granted in part, 224 Conn. 909,617 A.2d 166 (1992). "There is no absolute right to alimony.Valante v. Valante, 180 Conn. 528, 530, 429 A.2d 964
(1980). . . . Awards of alimony incident to marital dissolution rest in the sound discretion of the trial court." (Citation omitted.) Weinstein v. Weinstein, 18 Conn. App. 622, 637,561 A.2d 443 (1989).
"Connecticut does not presently recognize, as valid marriages, living arrangements or informal commitments entered into in this state and loosely categorized as common law marriages." Collier v. Milford, 206 Conn. 242, 248, 537 A.2d 474
(1988). "[C]ohabitation alone does not create any contractual CT Page 4332-MMMM relationship or, unlike marriage, impose other legal duties upon the parties. In this jurisdiction, common law marriages are not accorded validity." Boland v. Catalano, 202 Conn. 333, 339,521 A.2d 142 (1987). "The rights and obligations that attend a valid marriage simply do not arise where the parties choose to cohabit outside the marital relationship." Id., citing McAnerney v.McAnerney, 165 Conn. 277, 285, 334 A.2d 437 (1973). Accordingly, because Connecticut does not recognize common law marriage and cohabitation alone does not create any contractual relationship or give rise to any other rights and obligations that attend to a valid marriage, such as the continuing duty to support upon which an award of alimony is primarily based, no right to palimony exists under Connecticut law.
Nevertheless, "[o]rdinary contract principles are not suspended . . . for unmarried persons living together, whether or not they engage in sexual activity. Contracts expressly providing for the performance of sexual acts, of course, have been characterized as meretricious and held unenforceable as violative of public policy." Boland v. Catalano, supra, 202 Conn. 339. "`[T]he courts should enforce express contracts between nonmarital partners except to the extent that the contract is explicitly founded on the consideration of meretricious sexual services. . . . In the absence of an express contract, the courts should inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit, or equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case.'" Boland v. Catalano, supra, 202 Conn. 340-41, quotingMarvin v. Marvin, 18 Cal.3d 660, 665, 557 P.2d 106,134 Cal.Rptr. 815 (1976). "Thus, a contract, express or implied, or some other tacit understanding between persons who are not married to one another which does not rely upon their sexual behavior is enforceable in the courts of this state." Burns v. Koellmer,11 Conn. App. 375, 381, 527 A.2d 1210 (1987).
Based on the foregoing, the plaintiff and the defendant entered into an enforceable contract when the defendant signed their June 13, 1991 agreement. This conclusion is supported by the documents submitted by the plaintiff at trial in support of her claim and marked as Plaintiff's Exhibits A, C and D. Nothing in these documents indicates that the contract was "founded on the consideration of meretricious sexual services." Boland v.CT Page 4332-NNNNCatalano, supra, 202 Conn. 340. The June 13, 1991 agreement is a valid and enforceable contract between nonmarital partners.
II. Bankruptcy
In his first special defense the defendant claims that the debt owed to the plaintiff was discharged, in whole or in part, by the bankruptcy court on or about June 23, 1992. The plaintiff has denied these claims in her reply to the defendant's special defenses. 11 U.S.C. § 727 (b) provides in pertinent part: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief. . . ." "Section 727 discharges a debtor from all debts that have arisen before the date of the order for relief. . . . Section 524(a) permanently enjoins all creditor actions to collect debts discharged under Section 727. . . . However, a debtor may voluntarily repay a discharged debt. 11 U.S.C. § 524
(f)." (Citations omitted.) In re Getzoff, 180 B.R. 572, 573 (9th Cir. BAP 1995). "The debtor may also enter into an agreement with a creditor to reaffirm an otherwise dischargeable debt. The agreement will be binding only if made in compliance with Section 524(c) and (d)." In re Getzoff, supra, 180 B.R. 574.
The date of "the order for relief," for purposes of the statute governing the discharge of debts, 11 U.S.C. § 727
(b), is the date on which the debtor files the bankruptcy petition. In re Clement, 136 B.R. 557, 559 (Bkrtcy. C.D. Cal. 1992), citing 11 U.S.C. § 301. Accordingly, under § 727 (b), all debts incurred by the debtor before filing the bankruptcy petition are dischargeable in bankruptcy, while debts incurred after the date of the filing of the petition are not discharged. See In re Hicks, 144 B.R. 419, 420 (Bkrtcy. E.D. Ark. 1992) ("Debts incurred after the date of the filing of the chapter 7 . . . are not discharged. "); In re Klein, 189 B.R. 505,506 (Bkrtcy. C.D. Cal. 1995) ("The Bankruptcy Code provides that, in a Chapter 7 case, a discharge `discharges the debtor from all debts that arose before the date of [the bankruptcy petition] . . .,' except as provided in Bankruptcy Code § 523 (a).").
In the present case, the defendant signed three written agreements with the plaintiff. In the first agreement, dated June 13, 1991, the defendant agreed "to pay $150.00 per week to Sandra Vibert as payment for shared household expenses. . . . In CT Page 4332-OOOO addition [the defendant] promise[d] to pay for all [his] long distance phone calls, plus tax, each month upon receipt of bill . . . to contribute one half of liquer [sic] expense ($14 at present time)," and "to repay in a timely fashion any monies expended on [his] behalf." Plaintiff's Exhibit A. The defendant admitted to entering into this agreement in his answer. In the second agreement, dated December 30, 1991, the defendant acknowledged that he owed the plaintiff the amount of $4,825.00. Plaintiff's Exhibit C. In his answer, the defendant denied sufficient knowledge or information to either admit or deny entering into this second agreement.
The defendant filed his petition for bankruptcy on June 7, 1991. The plaintiff was among the scheduled creditors listed on the defendant's petition. See Defendant's Exhibit 4. The bankruptcy court granted the defendant a discharge in bankruptcy on or about June 23, 1992. Pursuant to 11 U.S.C. § 727 (b), all of the defendant's debts owed to the plaintiff and incurred prior to June 7, 1991, subject to the exceptions enumerated in11 U.S.C. § 523, were discharged in bankruptcy. Nevertheless, the first agreement which the plaintiff seeks to enforce is dated June 13, 1991, six days after the defendant filed for bankruptcy. Because the defendant signed and entered into the June 13, 1991 agreement after filing his bankruptcy petition on June 7, 1991, the debt arising out of that agreement is not dischargeable in bankruptcy and that the defendant is, therefore, liable to the plaintiff for all debts incurred beginning June 13, 1991.
In the third agreement signed by the defendant, dated January 23, 1993, the defendant "confirm[ed] previous commitments and agreements," and agreed "to repay Sandra V. Vibert all monies in arrearage of unpaid shared household expenses from 1989 to the present date (above [1/23/93]) the unaudited amount of not less than $6,600.00 or not less than $100.00 per week for 66 weeks." Plaintiff's Exhibit D. The defendant admitted to entering into this agreement in his answer. This document suggests that the defendant agreed to "reaffirm" all debts incurred from 1989 to January 23, 1993, including those debts discharged in bankruptcy.
"Pursuant to Section 524(c) and (d), there are five requirements that must be fulfilled in order to properly reaffirm a previously discharged debt: (1) the agreement must be made prior to discharge; (2) the agreement must advise the debtor that the reaffirmation may be rescinded up to sixty days after it is filed; (3) the agreement must be filed with the court; (4) the CT Page 4332-PPPP debtor cannot have already rescinded the agreement within the proper time frame; and (5) the agreement must be in the best interest of the debtor." In re Getzoff, supra, 180 B.R. 574. "The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. . . . [R]eaffirmation agreements . . . are not favored under the Bankruptcy Code and strict compliance with the specific terms of Section 524 is mandatory." (Citations omitted.) In re Getzoff, supra, 180 B.R. 574. "A reaffirmation agreement which does not comply fully with Section 524 is void and unenforceable." Id.
"Section 524(c) applies to agreements `between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable. . . .'" Id. "Under Section 524(c), if the debtor's consideration is based in whole or in part on a discharged debt, then a reaffirmation agreement must be filed with the court." Id., 575. Since the consideration for the January 23, 1993 agreement was based in part on a discharged debt (the debt incurred from 1989 to the June 7, 1991 filing for bankruptcy), this agreement is a reaffirmation agreement and "is subject to the requirements of Section 524(c)." Id., 574. An examination of the agreement along with the evidence submitted at trial reveals that this agreement complies with none of the requirements of § 524(c). Accordingly, the January 23, 1993 agreement is void and unenforceable, as a reaffirmation agreement.
III. Interest
The plaintiff also seeks interest pursuant to General Statutes § 37-3a. Pursuant to General Statutes § 37-3a, "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions and arbitration proceedings under chapter 909 . . . as damages for the detention of money after it becomes payable." See Middlesex MutualAssurance Co. v. Walsh, 218 Conn. 681, 701, 590 A.2d 957 (1991). "Whether interest should be allowed as an element of damages `is primarily an equitable determination and a matter within the discretion of the trial court.'" Stephan v. Pennsylvania GeneralIns. Co., 224 Conn. 758, 765, 621 A.2d 258 (1993).
Interest awarded pursuant to General Statutes § 37-3a "is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him." Neiditz v.CT Page 4332-QQQQMorton S. Fine Associates. Inc., 199 Conn. 683, 691,508 A.2d 438 (1986). "Whether interest may be awarded depends on whether the money involved is `payable' . . . and `whether the detention of the money is or is not wrongful under the circumstances.'" (Citations omitted.) Stephan v. Pennsylvania General Ins. Co.,
supra, 224 Conn. 765. "If the trial court determines that one party has wrongfully detained funds, it must next determine the date the wrongful detention began. Where the claim rests on a breach of contract, statutory interest accrues from the date the contract was breached." Patron v. Konover, 35 Conn. App. 504,517, 646 A.2d 901, cert. denied, 231 Conn. 929 (1994).
IV. Duress
In his second special defense, the defendant claims that the agreements described in paragraphs 3, 4 and 5 of the plaintiff's complaint were entered into under duress in that the plaintiff threatened the defendant with harm and endangered his person and/or, property.
"For a contract to be valid it must have been freely entered.McCarthy v. Taniska, 84 Conn. 377, 381, 80 A. 84 (1911). A contract, therefore, is not valid if one party is put in fear by the other party for the purpose of obtaining an advantage over him." Lownds v. Lownds, 41 Conn. Sup. 100, 108, 551 A.2d 775
(1988). "Common law or classical duress was narrowly construed and required acts that were sufficient to overcome the mind and will of a person of ordinary firmness." Jenks v. Jenks, 34 Conn. App. 462,466, 642 A.2d 31 (1994), rev'd in part, 232 Conn. 750,657 A.2d 1107, on remand, 39 Conn. App. 139, 663 A.2d 1123
(1995). "`[U]nder the modern doctrine of duress, the pressure applied does not have to be such as to overcome the will . . . of a [person] of ordinary firmness but is sufficient if it in fact overcomes the will of the person against whom it is applied. In other words, any wrongful act or threat which actually compels the victim to act against his will constitutes duress.'" Id., quoting 25 Am.Jur.2d, Duress and Undue Influence § 3. "Under the modern rule we look to the effect of the wrongful acts on a particular person rather than to the hypothetical effect on a person of ordinary firmness." Id.
In the present case, the defendant failed to establish that the plaintiff's conduct compelled him to act against his will in entering into the above three agreements. "[W]here one insists on a payment which he honestly believes he is entitled to CT Page 4332-RRRR receive, . . . unless that belief is without any reasonable ground, his conduct is not wrongful and does not constitute duress." Second New Haven Bank v. Quinn, 1 Conn. App. 78, 82,467 A.2d 1252 (1983), citing Weiner v. Minor, 124 Conn. 92, 95,197 A. 691 (1938). Accordingly, the June 13, 1991 agreement is valid and enforceable and the defendant's claim of duress must fail.
CONCLUSION
The court finds the issues in the complaint for the plaintiff, and the issues on the first special defense for the defendant. The plaintiff is ordered to pay the sum of $2,218.95, being the sum accruing to the plaintiff after the credit of $3,450, and the sum of $850 are paid. The second special defense is found for the plaintiff.
The personal effects of the defendant have been restored to the defendant. The first ground of the counterclaim is therefore moot. The remaining two grounds of the counterclaim are found for the plaintiff.
The plaintiff is entitled to interest at 10% (§ 37-3c, C.G.S.), and costs.