[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The plaintiff and the defendant intermarried on September 12, 1992, in Boston, Massachusetts. The defendant has resided continuously in Connecticut at least twelve months next preceding the date of the complaint. There have been no minor children born to the defendant since the date of her marriage to the plaintiff. The marriage has broken down irretrievably.[1]
The plaintiff is 35 years old and in good health. He has a Bachelor of Arts degree in business. He has been self-employed in his own business, Evans Plus, Inc., a graphics firm, since 1989. That business has been continuously unprofitable and has depended upon cash infusions by the plaintiff to remain ongoing. The plaintiff also worked with his father in a similar graphics business, Identicolor, between approximately 1984 and 1995. The plaintiff earned salaries of about $93,000 in 1992 and $96,000 in 1993, with the substantial part coming from Identicolor. In 1995[2], the plaintiff earned a salary of $87,400 from Evans, Plus, Inc., and $17,000 from Identicolor. Due to several factors, including a falling out with his father and technical obsolescence of Identicolor's products, the plaintiff cannot CT Page 8317 reasonably expect to earn similar monies from Identicolor in future years.
The defendant is 34 years old and is also in good health. She has a Bachelor of Science degree in accounting. At the time of the marriage, in 1992, she was employed by American Brands as a financial analyst, earning in the "high $50,000's". Since June, 1994 through the present, she has worked in a similar position for General Electric Capital Corporation (GECC). She currently earns $75,250 per year, having last received a raise of nearly $8,000 early this year, 1996. The defendant testified that, and the court finds the reason for the move to GECC was its flexible work schedule for future purposes of child rearing and the like. The plaintiff encouraged the move for that reason. A consequence of the switch, however, was that the defendant forfeited approximately $10,000 in benefits she had accumulated at American Brands.
The causes of the breakdown of this marriage are neither simple nor extraordinary. One reason is primarily financial. The parties enjoyed a fairly extravagant life style that was apparently beyond their means. The plaintiff entered the marriage with well over $300,000 in liquid funds; the defendant contributed virtually nothing. A good part of the plaintiff's funds were spent on expensive vacations and on luxury gifts for the defendant. A mounting financial crush took its toll especially on the plaintiff. A second reason for the breakdown was the parties' incompatibility. The plaintiff developed an intimate relationship with an employee of his business. The evidence is clear cut enough to find that this relationship was developing when the plaintiff abruptly left the marital residence at the beginning of November, 1994. There was no viability in salvaging the marriage because of that relationship.
The court last addresses before entry of its orders, the matter of alimony. The court has carefully considered the statutory criteria set forth in C.G.S. § 46b-82, and the judicial gloss put upon that statute. "An award of alimony is based primarily on a spouse's duty to support. Hotkowski v.Hotkowski, 165 Conn. 167, 170, 328 A.2d 674 (1973) . . . . The Court, when awarding alimony is required by § 46b-82 to consider each party's needs." Martone v. Martone, 28 Conn. App. 208
(1992). Accord, Weiman v. Weiman, 188 Conn. 232 (1982). Alimony, in whatever form, "is not to be considered either as a reward for virtue, or as a punishment for wrongdoing." Carter v.CT Page 8318Carter, 8 Conn. App. 356, 359 (1986). At the same time, however, the Court, when awarding alimony, should consider the causes for the dissolution of the marriage. "Therefore, [a party's] conduct that contributed to the dissolution [is] relevant and could provide a basis for an award of alimony." Martone v. Martone, at 216.
In this case, there is simply no valid reason for the defendant to receive rehabilitative alimony or alimony based upon particular need. "The unambiguous purpose of rehabilitative alimony is to allow the recipient spouse to attain self-sufficient." O'Neill v. O'Neill, 13 Conn. App. 300, 313
(1988). Here, the defendant is well educated, has an established career path, and is gainfully employed, none of which were interrupted or disturbed by her marriage to the plaintiff. In fact, her income from employment increased substantially during the course of this brief marriage. To award the defendant lump sum alimony in an amount suggested by her in her claims for relief would not be appropriate, and would be punitive to the plaintiff.
On the other hand, some lump sum alimony is appropriate when one considers the plaintiff's conduct in contributing to the breakdown of the marriage. The plaintiff contributed heavily to the financial strain on the marriage by lavishing gifts and expensive vacations on the defendant. Also, it was the plaintiff who essentially abandoned the defendant with little or no warning. He left the defendant to cultivate a relationship with another woman. In this sense, the plaintiff was primarily responsible for the breakdown of the marriage.
The court, having considered the evidence in light of all statutory criteria, enters the following orders:
(1) The marriage of the parties is dissolved on the grounds of an irretrievable breakdown;
(2) The maiden name of the defendant, Jennifer Perry, is restored forthwith;
(3) The plaintiff is ordered to transfer title to the 1991 Porsche 928 automobile to the defendant within 30 days, and to cause the loan balance of the same to be paid according to its terms until completely paid; CT Page 8319
(4) The plaintiff is ordered to pay the defendant lump sum alimony of $10,000, no later than January 1, 1997;
(5) The plaintiff is ordered to contribute $10,000 to the defendant's counsel fees for the defense of this action, no later than January 1, 1997;
(6) Each party shall indemnify and hold the other harmless against any tax liability arising from any jointly filed tax return, occasioned by such party;
(7) Counsel for the plaintiff shall prepare the judgment file.
Dated at Stamford, Connecticut, this 25th day of October, 1996.
JOHN F. KAVANEWSKY, JR.