[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this marital dissolution action, the defendant has filed two post-judgment motions. He filed a pleading captioned, "Post-Judgment Motion to Modify" dated May 14, 1998 through which he requests,
"that the paragraph at the bottom of page 2, and continuing to the top of page 3 of the Judgment, shall be modified; and that the Court shall order that:
A. The total amount of his obligation stated as $31,500.00 shall be reduced, offset, suspended and/or terminated; and/or
B. The monthly payments of $310.61 shall be reduced, offset, suspended and/or terminated;
C. Orders shall be retroactive to the date of filing; and
D. Such further orders shall enter as the Court deems equitable."
The defendant also filed a pleading, dated June 17, 1998, captioned, "Amendment to Post-Judgment Motion to Modify; and/or Motion to Clarify, and/or to Open." While a search of the file does not reveal the original motion, the parties, and the court, treat this June 17, 1998 motion, even though captioned as an amendment, as the motion in chief. As such, it appears, in essence, to be a motion to open. In this motion, the defendant requests the following:
"A. Modification; Clarification. That the Judgment shall be modified to include the same numbered paragraphs as the CT Page 1077 Agreement; and that the modification provision that appears in paragraph 2 shall be found to apply to all subparagraphs in paragraph 2, including the sale of the home provision; and that the Court may order the home to be sold if Husband is unable to operate his present business as a result of failing health; and enter such orders forthwith; and/or
B. Open. That the Judgment shall be opened for reasons set forth herein, and the provisions proposed in the foregoing section A shall be ordered; and
C. Such further orders shall enter as the Court deems equitable."
During December, 1998, the court conducted an evidentiary hearing on both motions. Based on the evidence adduced at trial, the court makes the following findings and orders.
The marriage of the parties was dissolved by judgment dated November 12, 1996. At the time, the plaintiff was represented and the defendant represented himself. During the morning, the court, Barall, J., heard testimony while the matter remained contested. At one point when it became evident that the parties wished to privately discuss settlement, the court took a recess, after which the parties returned with a written agreement which was submitted and approved by the court. This agreement had been prepared by the plaintiff's counsel in advance of the hearing. When submitted, it included written changes to the original typed version. The agreement provides, in salient part:
"The Husband shall assume and pay and save harmless the Wife on the balance outstanding on the Mortgage on the former marital home at 6 Horse Shoe Drive, East Granby, in favor of Winsted savings Bank as of the date hereof. Said balance is approximately $31,500.00 and Husband agrees to continue to make the monthly payments due on this loan in the amount of $310.61 until said loan is fully paid. In the event the defendant Husband is unable to operate his present business as a result of failing health, such event shall be a change in circumstances for which the husband may seek a modification of this paragraph.
If a payment on the second mortgage is made by the Wife, the Husband shall be responsible for reimbursement and indemnification to the Wife of the amount of any payment or payments made. CT Page 1078
In the event the real property known as No. 6 Horse Shoe Drive, which is solely owned by the Wife, is sold, the Wife shall receive fifty (50%) percent and the husband shall receive fifty (50%) or the net proceeds of such sale. Husband's interest in the real property shall be secured by a mortgage which shall not be assignable nor hypothecated in any way. For the purposes hereof the term "net proceeds of sale" shall mean the contract sale price plus adjustments less the customary expenses of sale and any balance due on the existing mortgage in favor of Winsted Savings Bank. Any monthly installments made on said mortgage by the wife shall be credited to her upon sale of said property.
3. The husband shall repay to the Wife the sum of $4,500.00 which sum represents funds loaned by the Wife to the Husband's business, in forty-five (45) consecutive monthly installments of $100.00, commencing December 1, 1996, and on the first day of each month thereafter, until fully paid."
Following two paragraphs not germane to this discussion, the agreement states:
"6. Each party hereby waives any and all claims and demands he or she may have against the other for periodic alimony, support and maintenance, past, present and future. Each party acknowledges that if periodic alimony is not awarded at the time of any decree dissolving their marriage, it cannot thereafter be claimed by any party regardless of any change in circumstances."
The judgment file submitted by the parties and signed by the court parallels the language of the agreement, except that its operative paragraphs are unnumbered. This is an insignificant distinction.
The essence of the defendant's claim is that the provisions regarding the amount of his monthly payments, the amount of his total obligation, and an obligation that the plaintiff should be required to sell the property at a date certain should all be subject to modification, and he is entitled to a modification of these provisions because his failing health has had a negative impact on his business. Additionally, he asserts that if these provisions are not subject to modification, then the judgment should be reopened as the product of a mutual mistake or as unconscionable. CT Page 1079
As a starting point, it is axiomatic that while a provision for the payment of periodic alimony in a marital dissolution judgment is subject to modification, unless and to the extent precluded by the terms of the judgment, property disposition provisions in such judgments are not subject to modification. "Absent waiver, consent, submission to jurisdiction or statutory exception, the court is without subject matter jurisdiction to modify or correct a final judgment after the four month period for opening or setting aside a civil judgment has passed pursuant to General Statutes 52-212a. (Citations omitted) The court, however, retains continuing jurisdiction to modify final orders for the periodic payment of alimony or support, and the care, custody and visitation of minor children, subject to proof of certain conditions as provided in General Statutes 46b-86 and46b-56. The court does not retain `continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other under General Statutes 46b-81. (citation omitted)'" Fiddelman v. Redmon,37 Conn. App. 397, 401 (1995). "The Superior Court is vested with jurisdiction to assign property at the time it enters a decree dissolving a marriage. General Statutes 46b-81. Unlike periodic alimony and child support, the court's jurisdiction to assign property is not continuing. `By its terms, 46b-81(a) deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under General Statutes46b-81. Bunche v. Bunche, 180 Conn. 285, 289 (1980)'" Rosato v.Rosato, 40 Conn. App. 533 (1996).
If the decree is silent as to the characterization of an order, the court may analyze the structure of the dissolution decree to determine whether a provision is modifiable as alimony or non modifiable as a property disposition, and any ambiguous order should be examined in the context of the entire decree.Passamano v. Passamano 228 Conn. 85 (1993).
The court finds that the provisions which the defendant seeks to modify relate the disposition of property. They are not modifiable as periodic alimony. Indeed, to find them modifiable alimony would render the parties' waiver of alimony meaningless. Additionally, testimony adduced at the hearing before Judge Barall at the time of the judgment makes it clear that the intent of the parties in providing for the payment of the mortgage by the defendant was to effectuate a property disposition. The plaintiff testified credibly that during the course of the CT Page 1080 parties' marriage, the defendant had borrowed funds for business purposes without her knowledge and had caused the imposition of this mortgage on the former family residence. Earlier in the marriage, the defendant had quit claimed his interest in this property in response to the plaintiff's request for protection against the defendant's business creditors. In essence, the parties' agreement that the defendant would pay the mortgage reflected an understanding by the parties that the mortgage obligation was Mr. McDonnell's alone. The provisions relating to the monthly payment of the mortgage, the total mortgage debt, and the parties respective entitlements upon sale of the property were all property orders.
There are circumstances in which the court may retain post-judgment jurisdiction to affect marital property. The court need not deal conclusively with the parties' property at the time of the marital dissolution if it expressly retains jurisdiction to affect property at a later date. Ross v. Ross, 172 Conn. 269
(1977), Martone v. Martone, 28 Conn. App. 208 (1992). In Ross, where one of the parties had requested a continuance of the marital dissolution hearing on the basis of his (then) present inability to deal with the financial issues of the marriage, the trial court, though denying his continuance, limited trial testimony to the question of the dissolution of the marriage. In its orders, the court granted a marital dissolution and expressly reserved the matters of custody and finances for a later hearing. The court subsequently made financial orders at this later hearing. Unlike Ross, the court in this case did not expressly reserve decision on a property distribution issue. Rather, the court assented to an agreement by the parties that the court would have post-judgment jurisdiction to modify that portion of the judgment which related to the defendant's monthly mortgage payment obligation.
Contrary to the defendant's assertion, the language of the handwritten sentence in the parties' agreement concerning subsequent modification relates only to the amount of the monthly payments and not the total mortgage obligation or ownership of the residence. This determination is based upon a fair and literal reading of the modification language as well as the location of this provision in the parties' agreement.
Even though limited to the amount of monthly payments, the agreement and order purported to empower the court to modify a property settlement. The court, however, can not confer subject CT Page 1081 matter jurisdiction where it does not exist. The court's power to decide a controversy is derived from the constitution and from statute; the court cannot confer subject matter jurisdiction upon itself. Colby v. Colby, 33 Conn. App. 417 (1994). Thus, neither the parties' agreement nor the court's assent to it suffices to give the court continuing jurisdiction to modify the parties' property settlement. cf. Bunche v. Bunche, 180 Conn. 285 (1980).
In making this determination, the court is mindful of the proposition that since the Superior Court is a constitutional court of general jurisdiction, ". . . Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged (citation omitted)." Roberts v. Roberts, 32 Conn. App. 465 (1993).
Thus, if the court could construe the disputed portion(s) of the judgment not as an intent to confer jurisdiction upon the court to modify a property settlement, but only to give it effect, the court would be empowered to entertain the instant motion to modify. The plain language of the agreement regarding modification and the clear intent of the parties regarding the prospect of post-judgment modification belie this claim. It was the intent of the parties that the court should have jurisdiction to modify, and not merely to implement, the terms of the judgment.
Accordingly, the motion to modify is denied.
With respect to the defendant's motion to reopen, C.G.S.52-212a provides that: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court."
In this instance, where the defendant's motion to open was filed substantially more than four months after the judgment, the court may nevertheless consider the motion. "The court does have jurisdiction to open a stipulated judgment, on a motion, even after the four month period has elapsed if the movant can show that the judgment was obtained by fraud, duress, accident, or mistake (citations omitted)." Yeong Gil Kim v. Magnotta, CT Page 108249 Conn. App. 203 (1998). The power of the court to open and vacate any judgment obtained by fraud, duress or mutual mistake is intrinsic to the court, independent of statutory provisions. InRe Baby Girl, 224 Conn. 263 (1992). Here, the defendant claims neither fraud nor duress; rather, he asserts that he and the defendant made a mutual mistake. "A mutual mistake is one that is common to both parties and effects a result that neither intended." Inland Wetlands Agency v. Landmark Investment Group,218 Conn. 703, 708 (1991). A mistake as to the nature of the rights and duties undertaken in an agreement may be sufficient to reform a contract. McWilliams v. American Fidelity Co.,140 Conn. 572 (1954). In this case, a review of the trial transcript, and particularly, the canvass of the parties, reveals that the parties were mistaken as to the rights flowing from their stipulation. Specifically, each thought that if the defendant could prove his inability to make the monthly mortgage payments because she was unable to operate his present business due to failing health, she could seek a modification of this obligation. Thus, the parties make a mutual mistake as to the law.
While the court has the authority to open a stipulated judgment based, in part, on a mutual mistake of law, the court is not required to grant such a request. "The right to relief against the consequence of a mutual mistake is an equitable right. In cases involving a claimed mistake of law, it is only when one person has obtained an unconscionable advantage over another that equity will grant relief. (citations omitted)" TexasCo. v. Crown Petroleum Corporation, 137 Conn. 217 (1950)
In this matter, both parties are in poor financial condition and have significant ailments. At the time of the marital dissolution, the plaintiff was receiving weekly payments from Social Security and Monarch Life Insurance Company totaling approximately three hundred and seventy-two ($372.00) dollars. Formerly a registered nurse, she is unable to work due to multiple sclerosis. Now she subsists on Social Security and food stamps totaling one hundred and eighty six ($186.00) dollars a week. In turn, at the time of the marital dissolution, the defendant presented a financial affidavit reflecting net weekly income from all sources totaling three hundred and seventy eight ($378.00) dollars. He now indicates a total weekly income of two hundred and four ($204.00) dollars less a loss of forty-eight ($48.00) dollars a week incurred because he maintains an office without offsetting income. For the defendant, retention of an office, while for him perhaps a symbol of viability, is no longer CT Page 1083 financially feasible. At the monthly cost of three hundred and fifty ($350.00) dollars, it is an unreasonable drain on his minimal resources.
At the time of the marital dissolution, the defendant was suffering from cancer, diabetes, and hearing loss. His hearing has continued to diminish to the point that he is only able to conduct business on a curtailed basis.
Notwithstanding the parties' difficult circumstances, the plaintiff extracted no unconscionable concession from the defendant to make the monthly mortgage payments because he was already obligated, by the terms of the mortgage, to make the payments. Thus, the portion of the judgment concerning the monthly payments amounts to no more than an affirmation of a pre-existing obligation on the part of the defendant. Certainly the mortgagee would not be bound by any relief the court might give the defendant-mortgagor.
By a provision in the same paragraph, the defendant agreed to assume, pay, and save harmless the plaintiff on the mortgage balance. While the plaintiff testified that she is not, in fact indebted on the mortgage, to the extent this provision can be read to obligate the defendant to protect the right of the plaintiff to live in the residence and not be forced by foreclosure to relocate, it is a new duty and not part of his underlying obligation to the mortgagee. While the defendant has not specifically requested relief from this provision, and a review of the trial transcripts reveals that the parties only intended the amount of the monthly payments to be subject to subsequent modification, under the facts of this case, where the mortgage was undertaken to secure a loan to repay the defendant's business debts, it is not an result that his obligation to hold the plaintiff harmless on the mortgage should endure.[1]
Accordingly, the motion to reopen is denied.
Bishop, J.